276 Neb. 187
STATE OF NEBRASKA, APPELLEE,
v.
DARRIELLE GRESHAM, APPELLANT.
No. S-07-1043.
Supreme Court of Nebraska.
Filed July 18, 2008.
Thomas C. Riley, Douglas County Public Defender, and Timothy P. Burns for appellant.
Jon Bruning, Attorney General, and Erin E. Leuenberger for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF CASE
Darrielle Gresham was convicted of attempted murder in the second degree, use of a deadly weapon to commit a felony, and possession of a defaced firearm. Gresham appeals his convictions and asserts that the district court for Douglas County erred in overruling his motions for a mistrial relating to closing argument and jury deliberations and in instructing the jury on attempted murder in the second degree as a lesser-included offense of attempted murder in the first degree. With regard to the latter, Gresham argues that attempted murder in the second degree cannot be a lesser-included offense of attempted murder in the first degree because both crimes are Class II felonies and are punishable by the same range of penalties. We reject Gresham's argument, and we affirm.

STATEMENT OF FACTS
On March 20, 2005, an Omaha police officer initiated a traffic stop of a vehicle in which Gresham was a passenger. When the vehicle eventually came to a stop, Gresham and another passenger got out of the vehicle and ran in different directions. The driver remained inside the vehicle. The officer who initiated the stop stayed with the vehicle but sent out a radio alert to other officers regarding the individuals who had fled from the vehicle.
Various officers in the area, including Officers Zachary Petrick and Frank Platt, responded to the alert. Petrick and Platt came upon Gresham, who was being pursued on foot by Officer Matt Chandler. Petrick noted that Gresham was carrying a gun. Chandler caught up to Gresham and grabbed him around the waist. As Chandler struggled with Gresham, Gresham fired a shot at Petrick who was standing approximately 10 feet away. The bullet Gresham fired entered Petrick's thigh and exited through his buttocks. Petrick returned a shot at Gresham, who fell to the ground as a result of either Petrick's shot or the struggle with Chandler. Chandler fell with Gresham. As the two continued their struggle on the ground, Gresham fired two shots toward Platt. With the assistance of other officers, Chandler eventually gained control of Gresham and handcuffed him. Gresham was arrested and was hospitalized as a result of injuries from the shot fired by Petrick. Officers found the gun Gresham had used, and it was later determined that the gun's serial number had been scratched or rubbed off.
Gresham was charged with attempted murder in the first degree, use of a deadly weapon to commit a felony, and possession of a defaced firearm. At trial, the State presented witnesses who testified to the facts set forth above. Gresham testified in his defense. He stated that he had the gun because he had taken it from a man who had threatened him earlier. He ran from the traffic stop because he was on probation and he was scared that if he was found with the gun, his probation would be revoked. Gresham testified that when Chandler caught up to him, Gresham was going to give up, and that he took the gun out of his pocket to let Chandler know that he had it. Gresham denied that he intentionally fired any shots; he testified that he did not remember firing his gun, nor did he remember anything from the time he was handcuffed until he awoke in the hospital.
The trial court instructed the jury on attempted murder in the second degree as a lesser-included offense of attempted murder in the first degree. Gresham objected to the lesser-included offense instruction and argued that because both offenses were Class II felonies, attempted murder in the second degree could not be a lesser-included offense. The court gave the instruction over Gresham's objection.
During the rebuttal portion of the State's closing arguments, the prosecutor commented on the jury's duty to assess the credibility of witnesses and reasonable doubt. The prosecutor stated in part:
The Judge will give you an instruction on beyond a reasonable doubt and what that means. And that last sentence is proof beyond a reasonable doubt. It does not mean proof beyond all possible doubt. What I said before that is that proof beyond a reasonable doubt is similar to situation[s] in more serious and important transactions in life. So you can have some doubt and still decide this case, but the more serious and important transactions in life, for example hiring somebody to be your CEO for your corporation, hiring somebody to take care of your kids on a European vacation. Would you trust that man?
Gresham objected to the prosecutor's statement and moved for a mistrial. The court overruled the motion.
The case was submitted to the jury in the late morning of June 26, 2007. The jury deliberated through that afternoon and the next day. Late in the afternoon of June 27, the jury sent a note to the court stating that it was at an impasse. The court questioned the jury and determined that the jury had reached a unanimous decision regarding the charge of possession of a defaced firearm but was at an impasse with respect to the two other charges. The court asked the jurors whether they thought additional further deliberations, following an overnight break, might result in a just and unanimous verdict. The foreperson replied, "I don't think it's probable, no." However, other jurors disagreed and thought that the issues could be resolved. The court stated that it was "getting a sense from more persons that it would be appropriate to give this further thought and further reflection and further deliberation." The court therefore stated that the jury should break for the evening and return for further deliberations the next morning.
After the court so informed the jury, one juror reminded the court that, as she had noted during voir dire, she was scheduled to leave on vacation the next day, June 28, 2007. The court asked whether she had airplane tickets; she responded that the trip would be by car. The court asked the jury how the votes were divided as to the two counts that were not unanimous. The foreperson responded that the vote was 11 to 1. The court sent the jurors to the jury room to discuss whether they would prefer to continue deliberations that evening or return the next day. While the jury was outside the courtroom, Gresham moved for a mistrial and declaration of a hung jury based on the 11 to 1 split and the possibility that the juror who was to leave for vacation the next day would be subject to "serious outside pressure" to cause an end to deliberations. The court overruled Gresham's motion. The court excused the jury after being informed that the jurors preferred to return to deliberations the next morning rather than continuing that evening.
The jury continued deliberations on the morning of June 28, 2007. At approximately 10:45 a.m., the jury informed the court that it had reached unanimous verdicts. Before reading the verdicts, the court asked the jury foreperson whether, in light of the prior day's events, there was any undue pressure placed on the one dissenting juror. The foreperson responded that there was not. The verdict form stated that the jury found Gresham guilty of attempted murder in the second degree, use of a deadly weapon to commit a felony, and possession of a defaced firearm. The court polled the jurors, and each juror responded that he or she agreed with the verdicts.
The court accepted the verdicts and entered judgment against Gresham. The court later sentenced Gresham to imprisonment for 20 to 40 years on the attempted murder conviction, for 10 to 20 years on the weapon conviction to be served consecutive to the sentence on the murder conviction, and for 20 to 60 months on the defaced firearm conviction to be served concurrent with the sentence for the attempted murder conviction.
Gresham appeals his convictions.

ASSIGNMENTS OF ERROR
Gresham asserts that the district court erred in (1) instructing on attempted murder in the second degree as a lesser-included offense of attempted murder in the first degree, (2) overruling his motion for a mistrial based on the prosecutor's comments during closing arguments, and (3) overruling his motion for a mistrial based on the jury's initial impasse on two counts.

STANDARDS OF REVIEW
[1,2] Whether a crime is a lesser-included offense is determined by a statutory elements approach and is a question of law. State v. Blair, 272 Neb. 951, 726 N.W.2d 185 (2007). When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. Id.
[3] The decision whether to grant a motion for mistrial is within the discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. State v. Gutierrez, 272 Neb. 995, 726 N.W.2d 542 (2007).

ANALYSIS

Attempted Murder in the Second Degree Is a Lesser-Included Offense of Attempted Murder in the First Degree Even Though the Two Crimes Are of the Same Class and Carry the Same Penalty.
Gresham asserts that the district court erred in instructing on the lesser-included offense of attempted murder in the second degree. He argues that attempted murder in the second degree cannot be a lesser-included offense of attempted murder in the first degree because both crimes are Class II felonies and carry the same penalty. We reject Gresham's argument.
[4] We have held that it is not error for a trial court to instruct the jury, over the defendant's objection, on any lesser-included offenses supported by the evidence and the pleadings. State v. Pribil, 224 Neb. 28, 395 N.W.2d 543 (1986). See, also, State v. James, 265 Neb. 243, 655 N.W.2d 891 (2003). We noted in Pribil that while a trial court is not required to sua sponte instruct on lesser-included offenses, the trial court may do so if the evidence adduced at trial would warrant conviction of the lesser charge and the defendant has been afforded fair notice of the lesser-included offense. Id. We further noted that either the State or the defendant may request a lesser-included offense instruction where it is supported by the pleadings and the evidence. Id.
[5] The rule we have adopted for determining whether an instruction on a lesser-included offense is warranted is as follows: A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. State v. Blair, supra. We have followed this rule since we readopted the rule in State v. Williams, 243 Neb. 959, 503 N.W.2d 561 (1993). In Williams, we described the rule as a statutory elements approach in which a court initially "looks only to the elements of the criminal offense" to determine if it is a lesser-included offense of another. 243 Neb. at 965, 503 N.W.2d at 565. If it is so determined, then the court looks to the evidence in the case to determine whether the evidence justifies an instruction.
Gresham concedes that in prior cases, we have held that attempted murder in the second degree is a lesser-included offense of attempted murder in the first degree. See, State v. Dixon, 259 Neb. 976, 614 N.W.2d 288 (2000); State v. Al-Zubaidy, 253 Neb. 357, 570 N.W.2d 713 (1997). Gresham asserts, however, that in those cases, we did not address the argument he advances here to the effect that a lesser-included offense must also be an offense that carries a lesser penalty.
Attempted murder in the second degree does not carry a lesser penalty than attempted murder in the first degree. Under Neb. Rev. Stat. § 28-201(4)(a) (Cum. Supp. 2006), criminal attempt is a Class II felony when the crime attempted is a Class I, Class IA, or Class IB felony. Murder in the first degree is either a Class I or Class IA felony, Neb. Rev. Stat. § 28-303 (Cum. Supp. 2006), and murder in the second degree is a Class IB felony, Neb. Rev. Stat. § 28-304(2) (Reissue 1995). Therefore, attempted murder in the first degree and attempted murder in the second degree are both Class II felonies subject to the same range of penalties under Neb. Rev. Stat. § 28-105 (Cum. Supp. 2006).
However, the relative penalties are not a factor in determining whether one offense is lesser included. As noted above, the rule we have adopted for determining whether an offense is a lesser-included offense employs a statutory elements approach in which we look only to the elements of two criminal offenses to determine whether one cannot commit one of the offenses, the "greater offense," without simultaneously committing the other offense, the "lesser offense." Under this approach, the "lesser offense" is the one for which feweror in the lesserincluded vernacular "less"elements are required to be proved. The approach focuses on the elements of the offenses, and comparison of the penalties associated with the offenses is not a factor.
In support of his argument, Gresham refers us to Rivers v. State, 425 So. 2d 101 (Fla. App. 1983), which he characterizes as supporting the proposition that no offense is deemed to be a lesser offense if it carries the same penalty as the crime under consideration. However, we agree with the greater weight of authority to the contrary. We note that in State v. Habhab, 209 N.W.2d 73 (Iowa 1973), the Iowa Supreme Court rejected an argument similar to Gresham's that an offense could not be a lesser-included offense if the penalty were not lesser. The court in Habhab noted that its "definition of included offenses .. . has never made reference to a requirement of a lesser penalty" and that its "previous holdings negative any inference the possible penalty for a criminal violation is in any way material to a determination of whether one offense is included within another." 209 N.W.2d at 74. See, also, Mungo v. U.S., 772 A.2d 240 (D.C. 2001) (under statutory elements test, court compares elements of two offenses without regard to punishment provisions); Nicholson v. State, 656 P.2d 1209 (Alaska App. 1982) (in connection with lesser-included offense analysis, "lesser" refers to relation between elements of offenses, not relation between their penalties); State v. Caudillo, 124 Ariz. 410, 604 P.2d 1121 (1979) (terms "lesser" and "greater" refer to number of elements in respective crimes and offense may be lesser-included whether penalty is less or same).
For completeness, we note that in Brown v. State, 261 Ind. 169, 301 N.E.2d 189 (1973), the Indiana Supreme Court held that the penalty for a lesser-included offense is not required to be less than that for the greater offense, but the court also commented that both the Indiana Constitution and the Eighth Amendment to the U.S. Constitution proscribe a greater penalty for a lesser-included offense. In the present case, attempted murder in the first degree and attempted murder in the second degree carry the same penalty; therefore, our decision in this case applies to circumstances where a lesser-included offense carries the same penalty as the greater offense, and we need not address the circumstance where a lesser-included offense might carry a penalty greater than that of the greater offense.
[6] Under the statutory elements test adopted by this court, the relative penalties are not a factor in identifying lesser-included offenses, and we conclude that the fact that two offenses are of the same class and carry the same range of penalties does not affect the determination of whether one is a lesser-included offense of the other. In the present case, Gresham does not argue that the lesser-included offense instruction was improper either because the offenses failed the statutory elements test or because the instruction was not supported by the evidence. His sole argument is that the instruction was improper because the offenses carried the same penalty. Having rejected this argument as a matter of law, we conclude that the district court did not err in instructing the jury on the lesser-included offense of attempted second degree murder.

District Court Did Not Abuse Its Discretion by Overruling Motion for Mistrial Based on the Prosecutor's Comments.
Gresham asserts that the district court erred in overruling his motion for mistrial based on the prosecutor's statements during closing argument. He argues that the prosecutor's rhetorical question regarding whether the jurors would trust "that man" as a babysitter for their children was a reference specifically aimed at Gresham and, as such, was improper and highly inflammatory. We conclude that the district court did not abuse its discretion by overruling Gresham's motion for a mistrial on the basis of these comments.
[7] Generally, in assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the prosecutor's remarks were improper. It is then necessary to determine the extent to which the improper remarks had a prejudicial effect on the defendant's right to a fair trial. State v. Barfield, 272 Neb. 502, 723 N.W.2d 303 (2006), disapproved on other grounds, State v. McCulloch, 274 Neb. 636, 742 N.W.2d 727 (2007). In Barfield, we found prosecutors' remarks to be improper based in part on personal invective aimed at the defendant. We noted that prosecutors are charged with the duty to conduct criminal trials in such a manner that the accused may have a fair and impartial trial and that prosecutors are not to inflame the prejudices or excite the passions of the jury against the accused. Id.
Taken in the context in which it was delivered, we do not find the challenged comment in this case to be improper or to have had a prejudicial effect on Gresham's right to a fair trial. Gresham characterizes the prosecutor's rhetorical question, "Would you trust that man?" as conveying a message to the jurors on a personal level that Gresham was a danger to their children because he was not the type of man they could trust to care for their children. Viewing the question in context, however, we do not read it as a specific reference to Gresham or to any danger he might pose to the children of the jurors. Instead, the prosecutor was explaining the concept of reasonable doubt and how proof beyond a reasonable doubt was such that one would rely on it in the most serious and important transactions of life. As examples of such serious and important transactions of life, the prosecutor used "hiring somebody to be your CEO for your corporation" and "hiring somebody to take care of your kids on a European vacation." We read the prosecutor's immediately ensuing rhetorical question, "Would you trust that man?" to be a reference to the hypothetical "somebody" that one would hire and the level of trust one would place on such person. We do not read the comment as a specific reference to Gresham.
We disagree with Gresham's characterization of the prosecutor's statements, and we determine that such statements were not improper and therefore did not have a prejudicial effect on Gresham's right to a fair trial. We conclude that the district court did not abuse its discretion by overruling Gresham's motion for a mistrial based on such statements.

District Court Did Not Abuse Its Discretion by Overruling Motion for Mistrial Based on Jury's Initial Impasse on Two Counts.
Gresham asserts that the district court erred in overruling his motion for mistrial with respect to the jury's initial impasse on the counts of attempted murder and use of a deadly weapon to commit a felony. He argues that the jury was deadlocked and that there was a danger that the dissenting juror could be subject to outside pressure to change his or her vote. Having reviewed the record, we conclude that the district court did not abuse its discretion by overruling the motion for a mistrial based on the initial jury impasse.
Gresham likens this case to State v. Garza, 185 Neb. 445, 446, 176 N.W.2d 664, 665 (1970), in which the jury, after having deliberated for some time, reported that it was "hopelessly deadlocked" at 11 to 1. The trial court admonished the jury with what this court characterized as an "Allen charge" based on the case of Allen v. United States, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896). The trial court in Garza told the jury
"in view of the fact that the vote is now 11 to 1, . . . this case should be disposed of by your verdict, and it is certainly my earnest hope and, likewise, my firm belief that this can be accomplished. . . . I just can't be convinced that there is no possibility of your agreeing."
185 Neb. at 446, 176 N.W.2d at 665 (emphasis omitted). The court then ordered the jury "'to retire to your jury room" and "'to earnestly renew your efforts to come to a verdict in this case." Id. (emphasis omitted). Forty-five minutes later, the jury arrived at a verdict of guilty.
In Garza, we noted that in Potard v. State, 140 Neb. 116, 299 N.W. 362 (1941), this court had rejected the giving of an Allen charge as prejudicial error because its purpose was to peremptorily direct an agreement. This court also found that the instruction in Garza constituted reversible error because "the court made it very clear that in its judgment a verdict could and should be arrived at" and the instruction was "tantamount to telling the dissenting juror that he was wrong." Id. at 449, 176 N.W.2d at 667. Gresham asserts that the district court in this case gave a similarly improper order to the jury.
We note that the facts of this case are significantly different from those in Garza. The jury in this case reported to the court that it was at an "impasse" rather than that it was deadlocked, and the jury sought guidance from the court. The court questioned the jury in an apparent attempt to determine whether there was a deadlock. The court asked the jurors whether they felt that after the approximately 11 to 12 hours during which they had deliberated, taking an overnight break and returning the next day for further deliberations could result in unanimous verdicts. Although the jury foreperson answered that it was not probable, other jurors disagreed and stated that they thought that the impasse could be resolved. The court indicated that it had the sense that more jurors thought further deliberation would be worthwhile, and the court therefore ordered the jury to separate for the evening and to return for further deliberations the next day.
[8] We determine that the district court's actions in this case did not constitute an improper Allen charge. The court did not pressure the jury to reach unanimous verdicts; instead, the court determined that the jurors themselves thought they could reach unanimous verdicts with further deliberation and it therefore instructed the jury to take an overnight break and to continue deliberations the next morning. An instruction directing the jury to continue its deliberations does not require reversal if it cannot be shown that it tended to coerce the jury. Shipler v. General Motors Corp., 271 Neb. 194, 710 N.W.2d 807 (2006). In this case, there is no indication that the instruction tended to coerce the jury.
Gresham further argues that a mistrial should have been granted because of possible outside pressure on the juror who needed to leave on a scheduled vacation the next day. At the time Gresham moved for a mistrial, there was no indication that outside pressure would influence the verdict. The court allowed the jury to determine for itself whether it preferred to continue deliberations that night or to return the next day, and there was no indication that the juror who needed to leave was in fact the dissenting juror or could unduly influence the dissenting juror. Furthermore, after unanimous verdicts were returned, the court asked the jury foreperson without objection whether any undue pressure had been placed on the dissenting juror, and the foreperson responded that there had not. The court also polled the jurors, and all jurors indicated their agreement with the verdicts.
There was no indication that undue pressure was exerted or that the court's instruction to continue deliberations coerced the jurors to reach unanimous verdicts. We therefore conclude that the district court did not abuse its discretion by overruling Gresham's motion for a mistrial based on the jury's initial inability to reach unanimous verdicts on two counts.

CONCLUSION
We conclude that the district court did not err in instructing the jury on attempted murder in the second degree as a lesserincluded offense of attempted murder in the first degree, and we conclude that the district court did not abuse its discretion by overruling Gresham's motions for mistrial based on the prosecutor's statements in closing and on the jury's initial impasse with regard to the verdicts on two of the charges. We therefore affirm Gresham's convictions.
AFFIRMED.