State of Nebraska, appellee, v.
Jamey R. Green, appellant.
___ N.W.2d ___

Filed January 17, 2014.    No. S-13-222.

1.  **Constitutional Law: Statutes: Appeal and Error.** The constitutionality of a statute is a question of law, regarding which the Supreme Court is obligated to reach a conclusion independent of the determination reached by the trial court.

2.  **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

3.  **Jury Instructions.** Whether jury instructions given by a trial court are correct is a question of law.

4.  **Motions for Mistrial: Appeal and Error.** Whether to grant a motion for mistrial is within the trial court's discretion, and an appellate court will not disturb its ruling unless the court abused its discretion.

5.  **Constitutional Law: Statutes.** In a challenge to the overbreadth and vagueness of a law, a court's first task is to analyze overbreadth.

6.  ____: ____. An attack on the overbreadth of a statute asserts that language in the statute impermissibly infringes on a constitutionally protected right.

7.  ____: ____. A statute may be unconstitutionally overbroad only if its overbreadth is substantial, that is, when the statute would be unconstitutional in a substantial portion of the situations to which it is applicable.

8.  **Constitutional Law: Criminal Law: Statutes.** The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.

9.  **Constitutional Law: Statutes: Legislature: Notice.** The more important aspect of the void-for-vagueness doctrine is not actual notice, but the requirement that a legislature establish minimal guidelines to govern law enforcement.

10. **Constitutional Law: Statutes: Standing.** To have standing to assert a claim of vagueness, a defendant must not have engaged in conduct which is clearly prohibited by the questioned statute and cannot maintain that the statute is vague when applied to the conduct of others.

11. ____: ____: ____. A court will not examine the vagueness of the law as it might apply to the conduct of persons not before the court.

12. ____: ____: ____. The test for standing to assert a vagueness challenge is the same whether the challenge asserted is facial or as applied.

13. **Appeal and Error.** In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.

14. **Constitutional Law: Search and Seizure.** The Fourth Amendment to the U.S. Constitution protects against unreasonable searches and seizures.

15. **Constitutional Law: Warrantless Searches: Search and Seizure.** Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions, which must be strictly confined by their justifications.

16. **Warrantless Searches: Search and Seizure: Probation and Parole.** The U.S. Supreme Court has recognized that there is an exception to the warrant requirement for searches and seizures when special needs, beyond the normal need for law enforcement, make the warrant and probable cause requirements impracticable. A probation setting is an example of such a special need.

17. **Constitutional Law: Warrantless Searches: Probation and Parole.** Conditions in probation orders requiring the probationer to submit to warrantless searches, to the extent they contribute to the rehabilitation process and are done in a reasonable manner, are valid and constitutional.

18. **Search and Seizure: Probation and Parole: Police Officers and Sheriffs.** Law enforcement may conduct probation searches of probationers so long as law enforcement is acting under the direction of a probation officer.

19. **Entrapment: Jury Instructions.** When a defendant raises the defense of entrapment, the trial court must determine, as a matter of law, whether the defendant has presented sufficient evidence to warrant a jury instruction on entrapment.

20. **Constitutional Law: Criminal Law: Entrapment: Words and Phrases.** The entrapment defense is not of constitutional dimension. In Nebraska, entrapment is an affirmative defense consisting of two elements: (1) the government induced the defendant to commit the offense charged and (2) the defendant's predisposition to commit the criminal act was such that the defendant was not otherwise ready and willing to commit the offense.

21. **Entrapment: Evidence: Proof.** The burden of going forward with evidence of government inducement is on the defendant. In assessing whether the defendant has satisfied this burden, the initial duty of the court is to determine whether there is sufficient evidence that the government has induced the defendant to commit a crime. The court makes this determination as a matter of law, and the defendant's evidence of inducement need be only more than a scintilla to satisfy his or her initial burden.

22. **Criminal Law: Entrapment: Estoppel.** The defense of entrapment by estoppel consists of four elements: (1) the defendant acted in good faith before taking any action; (2) an authorized government official, acting with actual or apparent authority and who had been made aware of all relevant historical facts, affirmatively told the defendant that his or her conduct was legal; (3) the defendant actually relied on the statements of the government official; and (4) such reliance was reasonable.

23. **Entrapment: Estoppel: Proof.** The same burdens apply for the defense of entrapment by estoppel as do for traditional estoppel.

24. **Entrapment: Intent.** Nebraska has adopted the "origin of intent" test for entrapment: If the intent to commit the crime charged originated with the government rather than the defendant, the defendant was entrapped.

25. **Trial: Prosecuting Attorneys.** Generally, in assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the

prosecutor's remarks were improper. It is then necessary to determine the extent to which the improper remarks had a prejudicial effect on the defendant's right to a fair trial.

26. **Motions for Mistrial: Prosecuting Attorneys: Proof.** Before it is necessary to grant a mistrial for prosecutorial misconduct, the defendant must show that a substantial miscarriage of justice has actually occurred.

27. **Criminal Law: Motions for Mistrial: Appeal and Error.** A mistrial is properly granted in a criminal case where an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.

28. **Criminal Law: Trial: Prosecuting Attorneys: Juries.** It is highly improper and generally prejudicial for a prosecuting attorney in a criminal case to declare to the jury his or her personal belief in the guilt of the defendant, unless such belief is given as a deduction from evidence.

29. **Evidence: Appeal and Error.** In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.

30. **Plea in Abatement: Appeal and Error.** Any error in ruling on a plea in abatement is cured by a subsequent finding at trial of guilt beyond a reasonable doubt which is supported by sufficient evidence.

Appeal from the District Court for Lancaster County: John A. Colborn, Judge. Affirmed.

Dennis R. Keefe, Lancaster County Public Defender, and Christopher Eickholt for appellant.

Jon Bruning, Attorney General, and Stacy M. Foust for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Heavican, C.J.

## I. INTRODUCTION

Jamey R. Green was convicted of possession of a deadly weapon by a prohibited person and was sentenced to 2 years' probation. He appeals. We affirm.

## II. BACKGROUND

Green was convicted in 2007 of several felonies in Minnesota for which he was serving probation. Green and the State of

Minnesota applied with the State of Nebraska for a courtesy supervision of Green's probation. An investigation was conducted by Karen Foster, a probation officer for the State of Nebraska. That investigation included, among other things, an August 29, 2011, visit by Foster to the home of Green's sister, where Green was planning to reside if the transfer was approved. Following that investigation, Green's transfer request was granted.

On September 21, 2011, Green signed paperwork agreeing to probation supervision by the State of Nebraska. At the time Green signed this paperwork, he met with Leslie Van Winkle, another probation officer. The courtesy supervision guidelines agreed to by Green stated that he "[s]hall not be in possession of any firearms or illegal weapons" and that he "[s]hall submit to a search and seizure of premises, person, or vehicle by a law enforcement officer or probation officer, with or without a warrant, day or night, to determine the presence of alcoholic beverages or controlled substances." In addition, the transfer application submitted by Green provided that both Green and the Nebraska Office of Probation were bound by the conditions of probation as set forth in the Minnesota order of probation. Among other requirements, the Minnesota order of probation provided that Green "shall submit to random searches of his person, vehicle and residence."

About a month later, Green was assigned a new probation officer, Kristi Bender. Bender had previously been on maternity leave, and Van Winkle had been helping with Bender's caseload during her absence. On October 20, 2011, Bender met with Green at the probation office. In the month that followed that meeting, Bender spoke with Green on the telephone on at least one occasion.

On November 14, 2011, Bender and Foster conducted a surprise home visit at Green's home. While on the visit, Bender asked to view Green's bedroom. Upon being shown the room, Bender and Foster noted a sword and knife collection lining the walls of the bedroom. After returning to the office, Bender spoke with a colleague who had law enforcement experience to discuss whether Green was permitted to have the swords

and knives. Based upon that conversation, Bender thought that Green might have violated the law in possessing the swords and knives, so she contacted the Lincoln Police Department. The next day, after considering the matter and consulting with others at the police department, Joshua Zarasvand, the officer assigned to Bender's call, determined that officers needed to examine the collection to determine whether it was legal for Green to possess it.

Zarasvand, along with several other uniformed officers, met Bender at a location near Green's home. Zarasvand reviewed a copy of Green's probation contract that was provided by Bender. At that point, the group approached the front door of the home. As part of the group was knocking on the front door, Officer Dawn Moore noticed that the garage door was opening. Moore and another officer approached the garage and found Green and his mother.

Bender, Zarasvand, and Officer Steven Wiese then joined Moore in the garage, and Bender informed Green that she needed to conduct a search of his residence. Green, Bender, Zarasvand, Moore, and Wiese then entered the home by the side door and went directly to the basement.

Upon entering the basement, Bender testified that the sword and knife collection was still set up as it had been the day before. Zarasvand, Moore, and Wiese all testified to the presence of the sword and knife collection. Zarasvand then asked Green if the swords and knives belonged to him; Green replied that they did. Zarasvand then placed Green under arrest. It was later determined that Green's collection consisted of 46 various swords and knives of differing quality, blade sharpness, and blade length.

Green was charged in Lancaster County Court with violation of Neb. Rev. Stat. § 28-1206 (Cum. Supp. 2012), possession of a deadly weapon by a prohibited person, a Class III felony. Following a preliminary hearing, the charge was bound over to the district court and an information was filed on March 16, 2012.

On March 21, 2012, Green filed a plea in abatement alleging that there was insufficient evidence adduced at the preliminary

hearing to bind the case over to district court. The plea in abatement was overruled on April 23.

On April 25, 2012, Green filed a motion to quash on the ground that § 28-1206 and related statutes were unconstitutionally vague and overbroad. The motion to quash was overruled on May 22. Green pled not guilty on June 6.

On August 15, 2012, Green filed motions to suppress the searches of his residence on November 14 and 15, 2011, along with all items observed in or seized from his residence and any statements made by him during his contact with law enforcement during the search and arrest on November 15. His motions were overruled.

Trial was then held on December 10 and 11, 2012. Testimony was given in accordance with the facts as stated above, including a stipulation that Green was a convicted felon and testimony that various knives from the collection had blades in excess of 3½ inches in length. In addition, Green testified in his own behalf that he disclosed his sword and knife collection on paperwork he had completed with probation in the presence of Van Winkle, but acknowledged that he did not verbally inform her of the collection.

Green's sister also testified. In her testimony, she stated that the sword and knife collection was in place at the time that Foster conducted her initial home visit and that she discussed the collection with Foster insofar as she "asked her if [the collection] would be okay." Green's sister testified that Foster told her that "she didn't see that [the collection] would be a problem." Green's sister did not testify that she relayed this information to Green.

In addition, a frequent visitor to Green's home testified that she was in the house in May 2011, prior to Green's arrival from Minnesota, and that the swords and knives were in place at that time.

At the jury instruction conference, Green requested that the jury be instructed on the defense of entrapment. The district court refused the instruction. Closing arguments were then held. During the State's closing, the prosecutor stated the following:

Typically at this stage, I would tell you there are [sic] one issue, maybe two that you have to decide, that we're only fighting about one or two things. But in this case I don't know what we're fighting about.

The defendant admitted to you, under oath, every single element of the crime that I have to prove in order for you to find him guilty. . . . Green said that on the 14th and 15th of November of 2011, he possessed a knife. He's admitted and stipulated that before that time he had been convicted of a felony, and that this all occurred here in Lancaster County, Nebraska. That's it. That's what I have to prove to you and that's what you have to find in order to find him guilty. So I'm a little confused on why we're here and what's the issue.

At this point, Green objected and moved for a mistrial, arguing that "the prosecutor is arguing his personal opinion with respect to the evidence in this case. He's commenting on the fact that we're here in trial and he's confused as to why we're having a trial." The district court overruled the motion for mistrial, but instructed the jury that "it is improper for attorneys to give their own personal opinions about the evidence and if [the prosecutor] has done so, you are ordered to disregard his personal opinions."

Following closing arguments and jury instructions, the jury retired to deliberate. About 90 minutes later, the jury returned with a guilty verdict. Green was subsequently sentenced to 2 years' probation. He appeals.

## III. ASSIGNMENTS OF ERROR

On appeal, Green assigns, restated and consolidated, that the district court erred in (1) denying his motion to quash, (2) denying his motions to suppress, (3) failing to instruct the jury on entrapment, (4) denying his motion for mistrial, (5) finding sufficient evidence to support his guilty verdict, and (6) denying his plea in abatement.

## IV. STANDARD OF REVIEW

[1] The constitutionality of a statute is a question of law, regarding which the Supreme Court is obligated to reach a

conclusion independent of the determination reached by the trial court.[1]

[2] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.[2]

[3] Whether jury instructions given by a trial court are correct is a question of law.[3]

[4] Whether to grant a motion for mistrial is within the trial court's discretion, and an appellate court will not disturb its ruling unless the court abused its discretion.[4]

## V. ANALYSIS

### 1. Motion to Quash

In his first assignment of error, Green asserts that the district court erred in denying his motion to quash. Green argues that the felon in possession statute under which he was charged, § 28-1206, and its definitional section, Neb. Rev. Stat. § 28-1201 (Cum. Supp. 2012), are unconstitutionally vague and overbroad.

Section 28-1206(1) provides in relevant part that "[a]ny person who possesses a firearm, a knife, or brass or iron knuckles and who has previously been convicted of a felony . . . commits the offense of possession of a deadly weapon by a prohibited person." Section 28-1201(5) defines knife as "any dagger, dirk, knife, or stiletto with a blade over three and one-half inches in length or any other dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds."

---

[1] *State v. Prescott*, 280 Neb. 96, 784 N.W.2d 873 (2010).

[2] S*tate v. Wiedeman*, 286 Neb. 193, 835 N.W.2d 698 (2013).

[3] *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013).

[4] *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

[5] As a general rule, in a challenge to the overbreadth and vagueness of a law, a court's first task is to analyze overbreadth.[5]

### (a) Overbreadth

[6,7] An attack on the overbreadth of a statute asserts that language in the statute impermissibly infringes on a constitutionally protected right.[6] A statute may be unconstitutionally overbroad only if its overbreadth is substantial, that is, when the statute would be unconstitutional in a substantial portion of the situations to which it is applicable.[7]

Green argues that the statute is overbroad in that it "necessarily prohibits every item with a blade exceeding three and one-half inches" and "would seem to prohibit every sharp object a person might have in his or her possession."[8]

But Green overlooks the fact that the definition of "knife" set forth in § 28-1201(5) does not prohibit the innocent possession of a knife with a blade in excess of 3½ inches. Rather, the possession of such a knife is only a violation of the law when the possessor, like Green, is a felon. Thus, the definition of a knife acts together with the criminal liability set forth in § 28-1206(1) to prohibit the possession of a knife in a fairly narrow set of circumstances—when that knife is possessed by a felon. This does not infringe upon a substantial amount of constitutionally protected conduct, but instead acts to deter convicted felons from possessing dangerous weapons.[9]

Green's argument that the statutes are overbroad is without merit.

### (b) Vagueness

[8,9] The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is

---

[5] *State v. Faber*, 264 Neb. 198, 647 N.W.2d 67 (2002).

[6] *Id.*

[7] *Id.*

[8] Brief for appellant at 29.

[9] See *State v. Jones*, 198 N.J. Super. 553, 487 A.2d 1278 (1985).

prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.[10] The more important aspect of the void-for-vagueness doctrine is not actual notice, but the requirement that a legislature establish minimal guidelines to govern law enforcement.[11]

[10-12] To have standing to assert a claim of vagueness, a defendant must not have engaged in conduct which is clearly prohibited by the questioned statute and cannot maintain that the statute is vague when applied to the conduct of others.[12] A court will not examine the vagueness of the law as it might apply to the conduct of persons not before the court.[13] The test for standing to assert a vagueness challenge is the same whether the challenge asserted is facial or as applied.[14]

Green lacks standing to assert that § 28-1206 is vague because his conduct clearly violated the statute. The statute prohibits the possession of a knife by a felon. And "[k]nife" is defined in § 28-1201(5) to include a knife with a blade that exceeds 3½ inches in length. Green was undisputedly a felon; the evidence presented at trial showed, Green admitted, and a jury found, that Green was in possession of knives with blades in excess of 3½ inches as defined by the statute.

Green lacks standing, and therefore his argument that the statutes are vague is without merit, as is his first assignment of error.

## 2. Motions to Suppress

In his second assignment of error, Green assigns that the district court erred in denying his motions to suppress and in admitting the sword and knife collection and statements he made to law enforcement at the time of the search.

[13] While Green assigns that his statements admitting that the weapons were his should have been suppressed and he restates that assignment in the facts section of his brief, he

---

[10] *State v. Faber, supra* note 5.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

does not otherwise argue the inadmissibility of those state-
ments. As such, the admissibility of the statements will not
be discussed further. In order to be considered by an appel-
late court, an alleged error must be both specifically assigned
and specifically argued in the brief of the party asserting
the error.[15]

Green does not contest the validity of Bender and Foster's
first entry into his home on November 14, 2011, and acknowl-
edges that once the officers were in his bedroom on November
15, the sword and knife collection was in plain view. But
Green contends the November 15 search was not done pursu-
ant to a warrant, does not fit within an exception to the warrant
requirement, and was not permitted by any condition of his
probation; as such, the fruits of that search—the sword and
knife collection—should be suppressed.

[14-17] The Fourth Amendment to the U.S. Constitution
protects against unreasonable searches and seizures. We have
stated that warrantless searches and seizures are per se unrea-
sonable under the Fourth Amendment, subject only to a few
specifically established and well-delineated exceptions, which
must be strictly confined by their justifications.[16] The U.S.
Supreme Court has recognized that there is an exception
to the warrant requirement for searches and seizures "when
'special needs,' beyond the normal need for law enforce-
ment, make the warrant and probable-cause requirements
impracticable."[17] A probation setting is an example of such a
special need.[18] Moreover, this court has held that "conditions
in probation orders requiring the probationer to submit to war-
rantless searches, to the extent they contribute to the rehabili-
tation process and are done in a reasonable manner, are valid
and constitutional."[19]

---

[15] *J.P. v. Millard Public Schools*, 285 Neb. 890, 830 N.W.2d 453 (2013).

[16] *State v. Borst*, 281 Neb. 217, 795 N.W.2d 262 (2011).

[17] *Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987).

[18] *Id*.

[19] *State v. Morgan*, 206 Neb. 818, 826-27, 295 N.W.2d 285, 289 (1980).

In this case, Green's Nebraska probation order allowed for searches for drugs or alcohol at any time. Of course, the search at issue was not done for the purposes of searching for drugs and alcohol. Rather, the record is clear that probation and law enforcement were interested in examining the sword and knife collection. But Green's Minnesota probation order included a broader search condition. Green argues that the Nebraska order narrowed the terms of his probation, but he provides no authority for his implicit assertion that the Minnesota condition on searches was no longer applicable. Indeed, the Nebraska order, which Green specifically agreed to, provided that all terms of the Minnesota order must continue to be complied with. Thus, Green's contention that the conditions of his probation did not permit this search is without merit.

And the search condition is reasonable and related to the rehabilitative process. While no warrant was sought, there was probable cause to obtain a warrant based upon Bender and Foster's viewing the sword and knife collection. In addition, the search was done during daylight hours, and the police located Green before conducting the search and were admitted into the home by Green. Given this context and the presence of probable cause, the search of Green's bedroom was reasonable.

Green also argues that the search condition was not related to the rehabilitative purposes of his probation because he was not convicted of a weapons violation. But state law prohibits all felons, regardless of the underlying felony, from possessing a weapon,[20] and Green's probation order specifically noted that he was not to possess illegal weapons. The search condition is related to this prohibition.[21] Green's argument that there is no definition of an illegal weapon is without merit, as state law specifically sets forth the weapons which may not be possessed by a convicted felon.[22]

---

[20] § 28-1206.

[21] See, e.g., *State v. Davis*, 6 Neb. App. 790, 577 N.W.2d 763 (1998).

[22] §§ 28-1201 and 28-1206.

Finally, Green argues that the search was illegal because it was done by law enforcement "for the purpose of locating and confiscating the alleged knives and swords in . . . Green's residence."[23] Green contends that the search "cannot be said to be a probation search [because t]he matter was turned over to law enforcement, whose members organized the search."[24]

[18] We disagree that on these facts the search was not a probation search. Law enforcement may conduct searches of probationers so long as law enforcement is acting under the direction of a probation officer.[25] The Eighth Circuit has noted that

> [p]robation offices are neither designed nor staffed to conduct these types of searches alone. . . . Probation officers often must bring law enforcement along to ensure the probation officers' safety. . . . In short, when a probationary condition authorizes searches by probation officers, the Fourth Amendment does not require probation officers to choose between endangering themselves by searching alone and foregoing [sic] the search because they lacked the resources and expertise necessary to search alone safely.[26]

Such was the case here. It was a probation officer, Bender, who originally expressed concern about the collection, and both Bender and Foster testified that because of safety concerns, nothing was said to Green about the collection during the home visit. Because of the probation office's questions about the legality of the collection, Bender ultimately contacted law enforcement. Finally, Bender and her supervisor were present during the search. Under these circumstances, we conclude that the search of Green's bedroom was done under the direction of probation.

This result does not change because Green was ultimately charged with being a felon in possession of a weapon rather

---

[23] Brief for appellant at 36.

[24] *Id.* at 34.

[25] See, e.g., *U.S. v. Warren*, 566 F.3d 1211 (10th Cir. 2009); *U.S. v. Newton*, 369 F.3d 659 (2d Cir. 2004); *U.S. v. Brown*, 346 F.3d 808 (8th Cir. 2003).

[26] *U.S. v. Brown, supra* note 25, 346 F.3d at 812.

than with a probation violation.[27] In the parole context, the Second Circuit has stated that

> [a] parole officer is charged with the duty of enforcing these conditions. To hold that evidence obtained by a parole officer in the course of carrying out this duty cannot be utilized in a subsequent prosecution because evidence obtained directly by the police in such a manner would be excluded, would unduly immunize parolees from conviction.[28]

We find this equally applicable to the probation context.

Green's second assignment of error is without merit.

### 3. Entrapment

In his third assignment of error, Green contends that the district court erred in not instructing the jury on the defense of entrapment.

[19] When a defendant raises the defense of entrapment, the trial court must determine, as a matter of law, whether the defendant has presented sufficient evidence to warrant a jury instruction on entrapment.[29]

[20-22] The entrapment defense is not of constitutional dimension.[30] In Nebraska, entrapment is an affirmative defense consisting of two elements: (1) the government induced the defendant to commit the offense charged and (2) the defendant's predisposition to commit the criminal act was such that the defendant was not otherwise ready and willing to commit the offense. The burden of going forward with evidence of government inducement is on the defendant.[31] In assessing whether the defendant has satisfied this burden, the initial

---

[27] See, *Latta v. Fitzharris*, 521 F.2d 246 (9th Cir. 1975); *United States ex rel. Santos v. New York State Bd. of Par.*, 441 F.2d 1216 (2d Cir. 1971).

[28] *United States ex rel. Santos v. New York State Bd. of Par., supra* note 27, 441 F.2d at 1218.

[29] *State v. Kass*, 281 Neb. 892, 799 N.W.2d 680 (2011).

[30] *United States v. Russell*, 411 U.S. 423, 93 S. Ct. 1637, 36 L. Ed. 2d 366 (1973).

[31] *State v. Kass, supra* note 29.

duty of the court is to determine whether there is sufficient evidence that the government has induced the defendant to commit a crime.[32] The court makes this determination as a matter of law, and the defendant's evidence of inducement need be only more than a scintilla to satisfy his or her initial burden.[33]

[22,23] This court has also recently approved a variation on the traditional entrapment defense. In *State v. Edwards*,[34] we recognized the defense of entrapment by estoppel, which consists of four elements: (1) the defendant acted in good faith before taking any action; (2) an authorized government official, acting with actual or apparent authority and who had been made aware of all relevant historical facts, affirmatively told the defendant that his conduct was legal; (3) the defendant actually relied on the statements of the government official; and (4) such reliance was reasonable. The same burdens apply for the defense of entrapment by estoppel as do for traditional estoppel.[35]

At trial, Green sought an instruction on traditional entrapment. Specifically, Green proposed the following instruction:

The state must prove beyond a reasonable doubt that . . . Green was not entrapped into committing the crime of Possession of a Deadly Weapon by a Prohibited Person. Entrapment means that:

1. The idea for committing the crime of Possession of a Deadly Weapon came from a law enforcement officer; and

2. a law enforcement officer then talked or persuaded . . . Green into committing the crime of Possession of a Deadly Weapon by a Prohibited Person. Simply giving . . . Green the opportunity to commit the crime of Possession of a Deadly Weapon by a Prohibited Person is not the same as persuading him to commit it; and

---

[32] *Id*.

[33] *Id*.

[34] *State v. Edwards*, 286 Neb. 404, 837 N.W.2d 81 (2013).

[35] *Id*.

3. . . . Green was not already willing to commit the crime of Possession of a Deadly Weapon by a Prohibited Person before a law enforcement officer talked to him.

In his brief on appeal, Green argues generally that there was a scintilla of evidence to support an entrapment defense because of the testimony of Green's sister, who testified that she asked Foster during the home check if Green could have the sword and knife collection and that Foster told her that the collection was permitted.

But Green now also notes the entrapment by estoppel defense. From his brief on appeal, it is not clear which instruction he now argues he should have had: the traditional entrapment instruction that he requested, or the entrapment by estoppel instruction mentioned in his brief. In his reply brief, Green seems to more clearly suggest that the entrapment by estoppel instruction was appropriate.

As an initial matter, we note that Green cannot predicate error on the district court's failure to give the entrapment by estoppel instruction when it was not asked to give that specific instruction. But in any case, Green is not entitled to an entrapment by estoppel instruction based upon the record.

Here, Green bears the initial burden of showing, among other elements, that he was affirmatively told that he could possess the sword and knife collection. But there is no evidence of that in the record. There is disputed evidence that Green's sister was told that Green could have the collection; but Green's sister is not Green. And there is no evidence that Green's sister ever communicated to Green that the collection was permissible.

There is also evidence that Green reported the collection on paperwork filed with the probation office and assumed that the collection was permitted, because he was not told otherwise. But this was not an affirmative statement from an authorized government official, nor can Green produce the paperwork where he allegedly disclosed this collection.

[24] And the traditional entrapment defense actually sought at trial is also inapplicable in this situation. As noted above, entrapment consists of two elements: (1) the government induced the defendant to commit the offense charged and

(2) the defendant's predisposition to commit the criminal act was such that the defendant was not otherwise ready and willing to commit the offense. Nebraska has adopted the "origin of intent" test for entrapment: "If the intent to commit the crime charged originated with the government rather than the defendant, the defendant was entrapped."[36] Put another way,

> entrapment is established where police officers or their agents incited, induced, instigated, or lured the accused into committing an offense that the person otherwise would not have committed and had no intention of committing. It entails the conception and planning of an offense by an officer and the procurement of its commission by one who would have not perpetrated it, except for the officer's trickery, persuasion, or fraud.[37]

Even assuming that Foster told Green's sister that the collection was permissible, there is no evidence that Foster was attempting to trap Green into being a felon in possession of a weapon. Green already owned the weapons. In fact, the evidence suggests that Foster and the others at the probation office were not even clear that the collection was in violation of the law.

And as with the defense of entrapment by estoppel, because no law enforcement officer told Green that he could have the collection, and at most told only his sister, Green cannot prove that a law enforcement officer "talked or persuaded" him into possessing the collection.

Green's third assignment of error is without merit.

### 4. Motion for Mistrial

In his fourth assignment of error, Green assigns that the district court erred in denying his motion for mistrial. Green asserts that comments made by the prosecutor during closing argument were prejudicial and entitle him to a mistrial. Green also argues that the prosecutor continued to make such comments even after the court admonished the jury to disregard the personal opinions of the prosecutor.

---

[36] *State v. Cain*, 223 Neb. 796, 800, 393 N.W.2d 727, 731 (1986).

[37] 22 C.J.S. *Criminal Law* § 72 at 113-14 (2006).

[25-27] Generally, in assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the prosecutor's remarks were improper.[38] It is then necessary to determine the extent to which the improper remarks had a prejudicial effect on the defendant's right to a fair trial.[39] Before it is necessary to grant a mistrial for prosecutorial misconduct, the defendant must show that a substantial miscarriage of justice has actually occurred.[40] A mistrial is properly granted in a criminal case where an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.[41]

[28] As an initial matter, it is not clear that the prosecutor's statements were improper. We have held that it is highly improper and generally prejudicial for a prosecuting attorney in a criminal case to declare to the jury his or her personal belief in the guilt of the defendant, unless such belief is given as a deduction from evidence.[42] Here, the prosecutor indicated that he did not know why there was a trial because, in his view, there were no issues left for the jury to decide. The prosecutor then pointed out, correctly, that Green had admitted to every element that the State had to prove. So, while the prosecutor might have referenced his personal beliefs, it appears that such were a deduction from the evidence. Green further argues that the prosecutor persisted in making such statements even after the admonishment. But Green does not specifically direct us to the statements which he now complains about, nor did he object to them at the time.

---

[38] *State v. Gresham*, 276 Neb. 187, 752 N.W.2d 571 (2008).

[39] *Id.*

[40] *State v. Floyd*, 272 Neb. 898, 725 N.W.2d 817 (2007), *disapproved on other grounds, State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727.

[41] *Id.*

[42] *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994), *overruled on other grounds, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998); *State v. Leonard*, 196 Neb. 731, 246 N.W.2d 68 (1976); *State v. Brooks*, 189 Neb. 592, 204 N.W.2d 86 (1973).

But even assuming that the statements were improper, the remarks were not so prejudicial as to require the granting of a mistrial. The jury was admonished that the attorneys were not permitted to give their personal opinions about the case and that if the jury believed that the prosecutor had done so, it should disregard those statements. A review of the closing arguments as a whole does not suggest that Green was deprived of his right to a fair trial.

Green's fourth assignment of error is without merit.

## 5. Plea in Abatement and
### Sufficiency of Evidence

[29] In his fifth and final assignment of error, Green argues that there was insufficient evidence to support his conviction. In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[43]

Green's argument is primarily premised on the lack of evidence presented that he intended to "threaten or cause harm to anyone."[44] But there is no intent element for the crime of felon in possession of a weapon.[45] The jury concluded that the evidence supported a finding of guilt because Green was a felon and he possessed a knife with a blade in excess of 3½ inches. The State did not have to show, and the jury did not have to find, that Green intended to harm anyone with a knife.

In this case, the parties stipulated that Green was a convicted felon and Green admitted that the sword and knife collection, found in his bedroom, was his. There was sufficient evidence to support Green's conviction.

[30] Green also contends that the district court erred in denying his plea in abatement. He argues that there was insufficient evidence to bind his case over for trial. But any error

---

[43] *State v. Watson*, 285 Neb. 497, 827 N.W.2d 507 (2013).

[44] Brief for appellant at 10.

[45] See § 28-1206(1).

in ruling on a plea in abatement is cured by a subsequent finding at trial of guilt beyond a reasonable doubt which is supported by sufficient evidence.[46]

Green's fifth assignment of error is without merit.

## VI. CONCLUSION

The decision of the district court is affirmed.

AFFIRMED.

---

[46] *State v. McGee*, 282 Neb. 387, 803 N.W.2d 497 (2011).