**UNITED STATES of America,
Plaintiff,**

v.

**Amy MOSER and Denver
Evans, Defendants.**

No. C4–02–83.

United States District Court,
D. North Dakota,
Northwestern Division.

Jan. 17, 2003.

Jeff L. Nehring, Nehring Law Office, Williston, ND, for Amy Moser.

James G. Wolff, Mohall, ND, for Denver Evans.

Cameron W. Hayden, U.S. Attorneys Office, Bismarck, ND, for United States.

### MEMORANDUM AND ORDER

HOVLAND, Chief Judge.

Before the Court is the Defendants' Motion to Suppress Evidence and brief filed on November 14, 2002. The Government filed a responsive brief on November 26, 2002, and an evidentiary hearing was held in Minot, North Dakota, on January 13, 2003. For the reasons outlined below, the Defendants' Motion to Suppress Evidence is DENIED.

## I. BACKGROUND OF THE CASE

The defendant, Denver Evans, resides in Heaton, North Dakota, with his girlfriend and co-defendant, Amy Moser. Evans and Moser have lived together at 415 Copper Street in Heaton for several years. Moser has been on supervised probation in Stutsman County since January 13, 2001, as a result of a state court felony conviction and will remain on supervised probation until January 13, 2005. To ensure Moser's compliance with her condition of probation, Moser was required to submit to a warrantless search of her person or home by any probation officer at any time.[1]

Rebecca Whitney is a probation officer employed with the North Dakota Parole and Probation Department. Whitney has been the officer assigned to and responsible for the supervision of Moser on probation. Whitney was aware that Denver Evans and Amy Moser had been living together at the 415 Copper Street address in Heaton since at least June 12, 2001.

According to Officer Whitney, Moser had been compliant with the conditions of her probation since June 2001. However, in early June 2002, Moser did not appear for a scheduled appointment. Tr. 12. A follow-up call made by Officer Whitney to Moser's residence revealed that the phone had been disconnected. Officer Whitney said that Amy Moser was not employed and Whitney testified that she believed Moser may have left the area. Moser's failure to appear for her scheduled appointment in early June 2002, combined with other factors, gave Officer Whitney reason and a need to travel to Moser's residence in Heaton to determine her present whereabouts. Tr. 12.

Officer Whitney testified that on or about June 5, 2002, she received a telephone call from an agent with the Stutsman County Drug Task Force. During this telephone conversation, Whitney was informed that the Task Force had a reliable, anonymous tip that methamphetamine was being manufactured at the Moser/Evans residence in Heaton. Tr. 13.

---

1. The search clause in Moser's judgment of conviction and sentence provided that she would "submit to search of your person, vehicle, or place of residence by any probation officer at any time of the day or night, with or without a search warrant." (Tr. 19). This is a standard search clause that was imposed by the court.

On June 6, 2002, Officer Whitney, along with several other law enforcement officers from the Stutsman County Drug Task Force, the North Dakota Bureau of Criminal Investigation, and the Stutsman County Sheriff's Department traveled to Heaton, North Dakota, to conduct a probation search at the Moser/Evans residence. According to Officer Whitney, three officers knocked on the door at the residence and the door was answered by Amy Moser. Officer Whitney informed Moser as to the reason(s) why law enforcement officers were present at her residence and a specific request was made to conduct a search. According to Whitney, Amy Moser said, "No problem" and Moser gave full consent to conduct a search of her residence. Tr. 14–15. Officer Whitney also did a urinalysis test on Moser. Tr. 15. Officer Whitney testified that Moser informed her of the location of weapons in the home. Tr. 16. Moser also informed Officer Whitney that co-defendant and live-in boyfriend Denver Evans was manufacturing methamphetamine at the residence. Tr. 16.

Craig Zachmeier testified at the evidentiary hearing held on January 13, 2003. Zachmeier is an agent with the North Dakota Bureau of Criminal Investigation. Tr. 34. He was the evidence custodian at the search conducted on June 6, 2002.

Zachmeier testified that he had been contacted by Troy Kelly of the Stutsman County Drug Task Force and had been informed that the Task Force had reliable information from an anonymous source that there was a meth lab located at the Moser/Evans residence in Heaton. Tr. 35. Zachmeier said he was one of the law enforcement officers who traveled to Heaton, North Dakota, on the morning of June 6, 2002, to assist in conducting the search. Agent Zachmeier said that both Amy Moser and Denver Evans were given Miranda warnings shortly after the law enforcement officers arrived at the residence and both agreed to allow the search to be conducted and agreed to fully cooperate with law enforcement. Tr. 36. The law enforcement officers did not have a search warrant. However, the search that was conducted was a "probation search."

After obtaining the full consent of Amy Moser to conduct a search of the residence, a number of items were located which became the basis for this prosecution. Specifically, a .22 caliber Marlin rifle was found under the living room couch which was a common area at the residence. Tr. 39–40. A shotgun was found by Agent Zachmeier above the doorway in the kitchen area. Tr. 41. In addition, a locked Sentry safe was located on the floor of the kitchen. According to Agent Zachmeier, Evans agreed to give the officers a key to the Sentry safe. Tr. 40. After obtaining the key from Evans, the officers opened the safe and located inside was a .9 mm hand gun, .20 gauge shotgun shells, .9 mm ammunition, and .22 caliber ammunition. Tr. 41. A search was also conducted of a shed outside the residence wherein there was a methamphetamine lab operated by Evans.

As previously noted, Officer Rebecca Whitney was the probation officer assigned to supervise Amy Moser. Officer Whitney was familiar with both Moser and Denver Evans and knew that they had lived together for years. Officer Whitney was also aware that Evans was a known drug user.

Evans contends that the search of his home was unreasonable and violated the Fourth Amendment.

## II. LEGAL ARGUMENT

### A. THE WARRANTLESS PROBATION SEARCH

The Fourth Amendment secures the persons, houses, papers and effects of

the people against unreasonable searches and seizures by the government. The general rule is that the government must secure a warrant before conducting a search. *United States v. Alberts,* 721 F.2d 636, 638 (8th Cir.1983). When an individual's home is searched without a warrant, the government bears the burden of justifying the search. *United States v. Selberg,* 630 F.2d 1292, 1294 (8th Cir.1980). This justification must be made by way of evidence proving the existence of an exception to the warrant requirement. *United States v. Bruton,* 647 F.2d 818, 822 (8th Cir.1981).

The United States Supreme Court has recognized several limited exceptions to the search warrant requirement when "special needs" make the warrant and probable cause requirements impracticable. See e.g., *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (automobile exception); *California v. Carney,* 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985) (automobile exception applied to mobile homes); *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (search of person and immediate vicinity pursuant to lawful arrest); *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (consent); *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (hot pursuit); *United States v. Jeffers,* 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951) (exigent circumstances).

 In this case, co-defendant Amy Moser was a probationer at the time of the search of her residence on June 6, 2002. "A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.'" *Griffin v. Wisconsin,* 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). Nevertheless, officers may search a person's home without a warrant based on probable cause when "special needs," beyond the normal need for law enforcement, makes the warrant and probable cause requirement impracticable. The Eighth Circuit has recognized that a state's operation of a probation system presents such "special needs." *United States v. Vincent,* 167 F.3d 428, 430 (8th Cir.1999). Probationers enjoy a much more limited conditional liberty dependent upon special restrictions which are intended to ensure that the probation serves as a period of rehabilitation and that the community is not harmed by the probationer's "being at large." Griffin, 483 U.S. at 868, 875, 107 S.Ct. 3164. In other words, a state may closely supervise probationers and impinge on their privacy rights to a greater extent than the general public to ensure that the probationer observes the conditions of his or her probation. The Eighth Circuit has held that the search of a probationer's home without a warrant and with less than probable cause does not violate the Fourth Amendment if the search is conducted under state probation regulations that satisfy the Fourth Amendment's reasonableness standard. *United States v. Vincent,* 167 F.3d 428, 430 (8th Cir.1999).

In *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), the Supreme Court upheld a search of a probationer conducted pursuant to Wisconsin regulations permitting "any probation officer to search a probationer's home without a warrant as long as his supervisor approves and as long as there are 'reasonable grounds' to believe the presence of contraband." 483 U.S. 868, 870, 871, 107 S.Ct. 3164. The Court reasoned that

"a warrant requirement would interfere to an appreciable degree with the probation system, setting up a magistrate rather than the probation officer as the judge of how close a supervision the probationer requires. Moreover, the de-

lay inherent in obtaining a warrant would make it more difficult for probation officials to respond quickly to evidence of misconduct, and would reduce the deterrent effect that the possibility of expeditious searches otherwise create."

*Id.* at 876, 107 S.Ct. 3164 (internal citations omitted). The Court also acknowledged that the probation regime would be unduly disrupted by a requirement of probable cause and stated

> it is both unrealistic and destructive of the whole object of the continuing probation relationship to insist upon the same degree of demonstrable reliability of particular items of supporting data, and upon the same degree of certainty of violation, as is required in other contexts. In some cases especially those involving drugs or illegal weapon the probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society. The agency, moreover, must be able to proceed on the basis of its entire experience with the probationer, and to assess probabilities in the light of its knowledge of his life, character and circumstances.

> To allow adequate play for such factors, we think it reasonable to permit information provided by a police officer, whether or not on the basis of firsthand knowledge, to support a probationer search.

*Id.* at 880, 107 S.Ct. 3164.

 The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of the search is determined by assessing, on one hand, the degree to which it intrudes upon an individual's privacy and, on the other hand, the degree to which it is need for the promotion of legitimate governmental interests. *United*

*States v. Knights,* 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). In *Knights,* the Supreme Court held "that the balance of these considerations requires no more than reasonable suspicion to conduct a search of [the] probationer's house." 534 U.S. 112, 122 S.Ct. 587, 591–92 (2001). The Supreme Court held that the probationer's reasonable expectations of privacy were significantly diminished by virtue of his probation conditions. *Id.* (stressing that probationers do not enjoy the same liberties to which all other law-abiding citizens are entitled). The Supreme Court recognized that the advancement of the state's interest in rehabilitating a probationer did not have to come at the expense of the state's interest in maintaining law and order. It explained that the state's interest "in apprehending violators of the criminal law, thereby protecting potential victims of criminal enterprise, may therefore justifiably focus on probationers in a way that it does not on the ordinary citizen." *Id.*

In *United States v. Vincent,* 167 F.3d 428 (8th Cir.1999), the Eighth Circuit held that a warrantless search of a probationer's home did not violate the Fourth Amendment where North Dakota's probation scheme provided for warrantless searches and the sentencing court deemed a warrantless search requirement reasonably necessary to ensure that the probationer did not commit more crimes.

In the years following Griffin, the circuit courts have struggled with questions arising out of the context of probation searches. A number of circuits have held that in order for a probationer or parole search to be valid, it must have been done to further probation or parole purposes. Those courts have held that law enforcement officers cannot utilize state probation or parole officials to carry out warrantless searches which they, acting alone, could

not execute without a judicial warrant. See *United States v. Ooley,* 116 F.3d 370, 372 (9th Cir.1997) (holding that a search conducted by police officers is valid only for probation purposes and not as a tactic to avoid the warrant requirement); *United States v. Coleman,* 22 F.3d 126 (7th Cir. 1994) (recognizing that federal law enforcement officers cannot use state probation officers to circumvent the warrant requirement); *United States v. Hill,* 967 F.2d 902, 908 (3rd Cir.1992) (search valid under special needs exception because it was prompted by defendant's wife's report that she found guns and drugs, no police were present, and search was conducted only to verify that defendant had violated his conditions of parole); *Owens v. Kelley,* 681 F.2d 1362, 1368–69 (11th Cir.1982) (stating that any search conducted pursuant to the search condition of probation must be carried out in a reasonable manner and only in furtherance of the purposes of probation).

The Eighth Circuit Court of Appeals has not had an opportunity to apply such a rule to a probation search, but it has done so in a parole search scenario. See *United States v. McFarland,* 116 F.3d 316 (8th Cir.1997), *cert. denied,* 522 U.S. 961, 118 S.Ct. 394, 139 L.Ed.2d 308 (1997). In McFarland, the Eighth Circuit recognized that a parole search was unlawful when it was no more than a ruse or a front for a police investigation. 116 F.3d, 316, 318. However, the court explained that this does not mean that parole officers and police cannot work together. The court simply held that parole and other law enforcement officers may work together "provided the parole officer is pursuing parole-related objectives and is not merely

a 'stalking horse' for the police." *Id.* The Eighth Circuit concluded that the parole officer in that case had authorized warrantless searches by police officers of the defendant's residence and storage locker to determine if the defendant was violating his parole and, therefore, the searches were conducted for parole purposes.[2]

The "stalking horse" issue was first addressed by the United States Supreme Court in *United States v. Knights,* 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). In Knights, The defendant's residence had been subjected to a warrantless search by a law enforcement officer who had reasonable cause to believe that a crime of arson would be found. The district court granted a motion to suppress the evidence finding that the search was for investigatory rather than probationary purposes. The 9th Circuit affirmed that decision. *United States v. Knights,* 219 F.3d 1138 (9th Cir.2000). On appeal, the United States Supreme Court concluded that the warrantless probation search was constitutional and the Court relied upon traditional Fourth Amendment "reasonableness inquiry." The Supreme Court concluded that it was constitutional for a law enforcement officer to search the home of a probationer when that officer had reasonable suspicion as to criminal activity and the probationer was subject to a search condition.

Defendant Evans contends that in order to establish the legality of the warrantless search conducted in this case, the Government must show that the intrusion into Evans' home, where his girlfriend Amy Moser also lived, fits either the "special needs" exception to the warrant require-

**2.** Although this case deals with a probation search rather than a parole search as occurred in McFarland, the standard applied to determine that validity of the search would apply equally to this case because there is no constitutional difference between probation and parole for purposes of the Fourth Amendment. *United States v. Replogle,* 176 F.Supp.2d 960, 968 (D.Neb.2001) *citing United States v. Hill,* 967 F.2d 902, 909 (3rd Cir.1992).

ment set forth in Griffin, or that it was otherwise reasonable for Fourth Amendment purposes under the framework of *U.S. v. Knights*. For the reasons outlined below, the Court believes that the facts of this case establish a "special needs" exception and that the warrantless search also satisfies the Fourth Amendment's reasonableness standard.

■ It should be noted that under current North Dakota law, a probation officer does not need reasonable suspicion to search the residence of a probationer pursuant to a standard search clause. *State v. Smith*, 589 N.W.2d 546 (N.D.1999). The North Dakota Supreme Court in *State v. Smith* held that a search of a probationer's home did not violate the Fourth Amendment because "reasonable suspicion" is not required for a probationary search so long as the search is reasonable. 589 N.W.2d 546, 548. The United States Supreme Court's decision in Knights left open the question of whether a probationary search without reasonable suspicion would still be permissible and survive constitutional challenge.

### B. THE PROBATION SEARCH WAS CONSTITUTIONAL AND WAS BASED ON A REASONABLE SUSPICION OR REASONABLE GROUNDS TO BELIEVE THAT A PROBATION VIOLATION HAD OCCURRED.

In this case, Probation Officer Rebecca Whitney was assigned to supervise the activities of co-defendant Amy Moser from January 2001—January 2005. Officer Whitney knew that Moser and Denver Evans lived together and Whitney was familiar with their criminal histories. The evidence clearly established that in early June 2002, Officer Whitney had a "reasonable suspicion" to believe that Amy Moser may have left the Heaton area and that there was a need to travel to Moser's residence to determine her whereabouts. Officer Whitney also received a telephone call on June 5, 2002, from the Stutsman County Drug Task Force wherein further information was brought to her attention that Moser and Evans may be operating a methamphetamine lab at their Heaton residence. Clearly, there was a "reasonable suspicion" and "reasonable grounds" were possessed by Officer Whitney that allowed a probationary search in this instance. There was a reasonable basis to believe that a probation violation had occurred and/or was occurring and that a warrantless search was needed for probationary purposes.

There is no question that Officer Whitney had the right to travel to the Moser/Evans residence on June 6, 2002; to knock on the door of the residence; and to attempt to determine Amy Moser' present status, her activities, and her whereabouts. According to Officer Whitney, Moser answered the door that morning and proceeded to voluntarily give Whitney full consent to a search of the Moser/Evans residence. Moser indicated that she would fully cooperate with Officer Whitney and the other law enforcement officers. The warrantless search conducted of the Moser/Evans residence in Heaton was clearly permissible and constitutional under *Griffin v. Wisconsin*; *United States v. Knights*; and the Eighth Circuit's decision in *United States v. Vincent*.

■ Moser was the live-in girlfriend of co-defendant Denver Evans. The warrantless search to which Moser had fully consented of the residence covered the residence of the parties and the common areas of the home; i.e., the living room, kitchen, bedrooms, etc. Neither Moser nor Evans had any reasonable expectation of privacy in the Heaton residence after Moser had given her full consent to a search of the residence and it was readily

apparent that probation violation(s) had likely occurred. The testimony of Officer Whitney established that after Whitney first entered the home, she observed a large, orange electrical cord running from the home to a shed outside as well as other items in the kitchen area that gave her a "reasonable suspicion" to believe that there was a methamphetamine lab and/or meth manufacturing activities going on at or near the Moser/Evans residence. Tr. 20. The items (firearms) seized during the search of the residence and which formed the basis for this prosecution were located in the common areas of the home. Evans admitted at the evidentiary hearing that Amy Moser "had access to every part of the house." Tr. 63. There was clearly a reasonable suspicion and/or reasonable grounds to believe that a probation violation had occurred. The search of the residence was not a ruse for the Task Force. The evidence has established that a reasonable suspicion existed to believe that probationer Amy Moser was in violation of the terms and conditions of her probation, and that a warrantless search of the entire residence was reasonable, justified, and consented to under the circumstances. The evidence has further established that the search was conducted for parole-related objectives and purposes and was not a ruse for a police investigation.

## C. EVANS AND MOSER CONSENTED TO A SEARCH OF THE RESIDENCE

At the time Officer Whitney knocked on the door of the Moser/Evans residence on June 6, 2002, and first spoke to probationer Amy Moser, Moser gave her full consent to a search of the residence which resulted in a waiver of any Fourth Amendment claim. Tr. 14–15. Although co-defendant Evans was not on probation at the time, Evans was obviously aware that he was residing with a convicted felon and a known probationer who was subject to warrantless probation searches of herself and her residence at any time. Both Moser and Evans claimed the residence at 415 Copper Street in Heaton as their primary residence.

According to Officer Whitney, she also asked Denver Evans if he had any objection to a search of the house. Tr. 29. Whitney testified that defendant Evans also consented and gave approval to such a search and the Court concludes that this testimony is reliable and corroborated by other evidence. Officer Whitney said that Evans was at all times cooperative and gave his full consent to a search. This was also confirmed by Agent Zachmeier of the North Dakota Bureau of Criminal Investigation. Tr. 38–39. Zachmeier testified that Evans was first given his Miranda warnings and he then agreed to voluntarily cooperate with law enforcement and also agreed to show them his meth lab.

■ The Court recognizes that the mere agreement to show law enforcement officers around a place of residence when those officers are already present in the home does not necessarily constitute a blanket waiver of a person's Fourth Amendment rights. The question of whether consent to a search was voluntary, or was the product of duress or coercion, is a question of fact to be determined by the Court from the totality of the circumstances. The Eighth Circuit has established several relevant factors that may be considered in making a determination as to the voluntariness of any consent to a search. These factors may include the following:

> 1) The age of the individual giving consent
>
> 2) The general intelligence and education of the consenting party
>
> 3) Whether the individual was under the influence of alcohol or a mind-altering substance

4) Whether the individual was informed of his right to withhold consent or of his Miranda rights prior to consent

5) The length of time the individual was detained or questioned

6) Whether the individual was physically threatened, intimidated, or punished by the police

7) Whether the individual relied upon promises or misrepresentations by the police

8) Whether the individual was in custody or under arrest when the consent was given

9) Whether the individual was in a public or secluded location

10) Whether the individual objected to the search or passively looked on, and

11) Whether the individual had experienced prior arrests so that he was aware of the protections the legal system affords to suspected criminals

*United States v. Hathcock*, 103 F.3d 715, 719 (8th Cir.1997); *United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir.1990).

█ The evidence in this case revealed that co-defendant Denver Evans was 22-years old at the time of the search in June 2002. Tr. 57. He is the father of two children. Evans has a prior criminal history. He was informed of his Miranda rights prior to giving his consent to a search of the residence. The evidence established that Evans had sufficient intelligence and street smarts to have understood what was transpiring on the morning of June 6, 2002. He had been living with probationer Amy Moser for several years and obviously was aware of the supervisory conditions that she was subject to as a convicted felon on probation until January 2005. Evans was not threatened, intimidated, or punished by anyone; nor was he questioned at any length. There were no misrepresentations made to Evans by the law enforcement officers. The unrefuted evidence has clearly established that Ev-

ans never objected in any manner to the search of the residence but instead, he passively looked on and often expressed a desire to cooperate. Evans testified that he had smoked dope and used meth the evening of June 5, 2002 (Tr. 57–58). However, his level of impairment from such drug usage is suspect under the circumstances. More important, his usage is not a factor that overrides all of the other relevant factors which support a finding that Evans' consent was voluntary.

The Court has reviewed and considered all of the evidence, testimony, investigative reports, and exhibits that were submitted in support of the motion to suppress. The Court concludes from a review of all of the evidence, and a careful consideration of all of the relevant factors and the totality of the circumstances, that Denver Evans voluntarily consented to a search of his residence on June 6, 2002. Evans also admitted at the evidentiary hearing on January 13, 2003, that he "could have" given his consent to Officer Rebecca Whitney but admitted that he does have memory problems related to his chronic methamphetamine usage. Tr. 62–63.

In summary, the Court concludes from the totality of the circumstances that both Amy Moser and Denver Evans gave their full and voluntary consent to a search of their joint residence on June 6, 2002, located at 415 Copper Street in Heaton, North Dakota. In addition, the Court concludes from the totality of the circumstances that Evans consented, voluntarily relinquished, and gave up the key to the Sentry safe in the kitchen of the home, and consented to a search of the safe on June 6, 2002.

## III. CONCLUSION

Based upon all of the evidence presented, the Court concludes that the warrantless probation search of the residence of Amy Moser and Denver Evans on June 6,

2002, in Heaton, North Dakota, was constitutionally permissible and was based on a "reasonable suspicion" or "reasonable grounds" of criminal activity and of possible violations of Amy Moser's probation. The search of the Moser/Evans residence was reasonable in scope. The Court further concludes that the search was not a ruse for a blanket investigative search of the residence by law enforcement officers which was devoid of any reasonable suspicion or reasonable grounds. Instead, the search of the Moser/Evans residence satisfies the reasonableness standard and requirements of the Fourth Amendment; the probationary search was pursued for parole-related objectives; and the search was not a ruse or a "stalking horse" for law enforcement officers and undertaken as a guise to search the Moser/Evans residence without any reasonable basis.

In this case, the state probation scheme provides for warrantless searches of the residence of Amy Moser. According to North Dakota law, the Court may impose any probation conditions deemed reasonably necessary to ensure that the defendant will lead a law-abiding life. See Section 12.1–32–07(2), N.D.C.C. Every probation carries an explicit condition that the defendant not commit another offense during probation and the Court may impose other conditions, including that the probationer will submit to a warrantless search at any time of his person or home. See Section 12.1–32–07(4)(n), N.D.C.C. When the terms of a probation order provide that the probationer is subject to a warrantless search of his or her home at any time, and that term is reasonable, the probationer has no Fourth Amendment right to be free from a warrantless search. The warrantless search requirement is reasonably related to the probation goals of rehabilitation and public protection.

Although the Court concludes that the search of the Moser/Evans residence satisfies the reasonableness requirements of the Fourth Amendment, it should be noted that the North Dakota Supreme Court has specifically held that a search of a probationer's home does not violate the Fourth Amendment because "reasonable suspicion" is not required for a probationary search so long as the search is reasonable. *State v. Smith,* 589 N.W.2d 546, 548 (N.D. 1999).

The Court further concludes that defendant Evans had no reasonable expectation of privacy in the common areas of the Moser/Evans residence. By his own admission, his live-in girlfriend (Amy Moser) had full access "to every part of the house". Tr. 63. Moser clearly had access to the common areas where the firearms were located. More important, Moser consented to a search of all such areas.

The Court concludes that from a careful analysis of the relevant factors to be considered as established by the Eighth Circuit, and from the totality of the circumstances, that both defendant Amy Moser and Denver Evans gave their full and voluntary consent to a search of the entire residence and the shed located near the home where Evans had components of his meth lab and had undertaken to manufacture methamphetamine. Both Evans and Moser voluntarily consented to the warrantless search and gave every indication that day that they would fully cooperate with Probation Officer Whitney and the other law enforcement officers on location at their residence.

For the reasons outlined above, the Court DENIES the Defendants' Motion to Suppress.