SANDSTROM, Justice,
dissenting.
[¶ 49] I respectfully dissent.
[¶ 50] Because the majority erroneously concludes the United States Constitution requires reasonable suspicion for probation searches, I dissent. The majority overreaches the United States Supreme Court decisions and nullifies our own well-established precedents, In doing so, it needlessly ties the hands of law enforcement, and negates the rehabilitative effects of appropriate probation conditions.
[¶ 51] ■ Further, even if reasonable suspicion -is the standard as declared by the majority, that is a question of law, which *74 we review de novo. It does’ not matter whether the officers or the district court thought or said there was reasonable suspicion. Based on the facts here, including the defendant’s drug-related criminal history and his travel with another on probation for drug-related convictions, there was reasonable suspicion, and we should affirm,
I
[¶ 52] Ballard argues, and the majority concludes, that because the probationary search was conducted without a showing of reasonable suspicion or probable cause, the district court erred in denying his motion to suppress the evidence found during the probationary search of the residence at which he was staying. Ballard, therefore argues, and the majority concludes, the district court’s order denying his motion to suppress evidence should be reversed, together with the criminal judgment in this matter, and he should be, permitted to withdraw his conditional guilty plea.
. [¶ 53] This Court has. previously been clear, as we held in State v. Smith, 1999 ND 9, ¶ 9, 589 N.W.2d 546: “We hold the search did not, violate the Fourth Amendment because ‘reasonable suspicion’ is not required for a probationary search as long as the search is reasonable.”
[¶ 54] The question of whether a war-rantless probationary search may be carried out without a showing of 'probable cause or reasonable suspicion is one that has divided other courts. See Jay M. Zit-ter, Annotation, Validity of Requirement That, as Condition of Probation, A Defendant Submit to Warrantless Searches, 99 A.L.R.5th 557 (2002) (sections 9[a] and 9[b] discuss the division among the nation’s courts). Although the United States Supreme Court has taken the opportunity to discuss the constitutional parameters of probation and parole searches on various occasions, it has yet to explicitly address the question of whether the Fourth Amendment authorizes a random search of a probationer without any particularized suspicion. See, e.g., Samson v. California, 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006) (the Fourth Amendment does not prohibit an officer from conducting a suspicionless search of a parolee); United States v. Knights, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) (question of whether a suspicionless search of a probationer violates the Fourth Amendment left unanswered).
[¶ 55] In 1987, the United States Supreme Court addressed the constitutionality of probationary searches in Griffin v. Wisconsin, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). In Griffin, a state regulation provided- that a probationary search could be conducted without a warrant so long as the probationer’s supervisor approved, and so long, as there were “reasonable grounds”- to believe contraband was present; Id. at 871, 107 S.Ct. 3164. After probation officers received information from law-enforcement that the probationer might- have been in possession of illegal contraband, a warrantless search was conducted, resulting in the probationer being charged with possessing an illegal firearm. Id. at 872, 107 S.Ct. 3164. Although the probationer challenged the constitutionality of the warrantless search of his home, the Supreme Court upheld the search, stating, “The search of [the probationer’s] home satisfied the demands of the Fourth Amendment because it was carried out pursuant to a regulation that itself satisfies the Fourth Amendment’s reasonableness requirement under well-established principles.” Id. at 873, 107 S.Ct. 3164. The Griffin court stopped short of “equating reasonableness with particularized suspicion” and declined to “articulate a federal reasonable grounds standard.” *75 Smith, 1999 ND 9, ¶ 14, 589 N.W.2d 546 (citing Griffin, at 872, 107 S.Ct. 3164). Instead, the Griffin court recognized that probation is a special circumstance, and acknowledged a “[s]tate’s operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, likewise presents special needs beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements.” Griffin, at 873-74, 107 S.Ct. 3164 (internal quotation marks omitted).
[¶ 56] In 2001, the United States Supreme Court once again addressed the constitutionality of probationary searches in United States v. Knights, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). In Knights, a probationer challenged the war-rantless probationary search of his home. Id. at 116, 122 S.Ct. 587. As part of his conditions of probation, the • probationer was required to submit his “person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer.” Id. at 114, 122 S.Ct. 587. After law enforcement suspected the probationer was involved in an arson, a search of the probationer’s house was conducted according to the séarch clause in his conditions of probation. Id. at 115, 122 S.Ct. 587. The search yielded evidence connected to the arson, and the probationer was arrested. Id. at 116, 122 S.Ct. 587. The probationer moved to suppress the evidence obtained during the probationary search, and the district court granted the motion on the grounds that “the search was for ‘investigatory’ rather than ‘probationary1 purposes.” Id. The Ninth Circuit Court of Appeals affirmed. United States v. Knights, 219 F.3d 1138, 1145 (9th Cir.2000) (“[Probationary] searches must be conducted for probation purposes and not as a mere subterfuge for the pursuit of criminal investigations.”).
[¶ 57] In reviewing the decision of the Ninth Circuit, the United States Supreme Court examined the totality of the circumstances to decide whether the search of the probationer’s home fell within the Fourth Amendment, stating, “[T]he reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual’s privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.” Knights, 534 U.S. at 118-19, 122 S.Ct. 587 (internal quotations marks and citation omitted). As a result, the Supreme Court held “the balance of these considerations requires no more than reasonable suspicion to conduct a search of [á] probationer’s house.” Id. at 121, 122 S.Ct 587. Bécause the Supreme Court concluded the search conducted in Knights was supported by reasonable suspicion, it declined to decide whether “a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment.” Id. at 120 n. 6,122 S.Ct. 587.
; [¶ 58] Although the United States Supreme Court left open the question of whether the Fourth Amendment authorizes a search solely predicated upon the condition of probation, not reasonable suspicion, it did address, and answer in the affirmative, whether a parolee could be subjected to such a search without violating the Fourth Amendment. In Samson v. California, a parolee who was placed on parole following a conviction for. being a felon in possession of a firearm was stopped by a law enforcement officer and asked whether he had an outstanding parole warrant. 547 U.S. 843, 846, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006). After informing the officer he had no outstanding *76 warrants, the parolee was searched, yielding a bag containing methamphetamine, and was charged accordingly. Id. at 847, 126 S.Ct. 2193. Because the parolee was searched solely on the basis of his status as a parolee, with no individualized suspicion of wrongdoing, the parolee appealed. Id. The California Court of Appeal affirmed, holding that because California law authorizes searches of parolees with or without cause, such a search is reasonable within the meaning of the Fourth Amendment so long as it is not arbitrary, capricious, or harassing. Id.
[¶ 59] In reviewing the decision of the California Court of Appeal, the United States Supreme Court noted the importance of the state’s interests in “integrating probationers back into the community and combating recidivism,” and employed a Fourth Amendment balancing test to weigh those interests against the parolee’s expectation of privacy. Id. at 849, 126 S.Ct. 2193. Because the high pourt recognized the .state had an “overwhelming interest” in supervising parolees who do not enjoy the absolute liberty to which average citizens are entitled and are “more likely to commit future criminal offenses,” the Court held that certain privacy intrusions, which would not otherwise be tolerated under the Fourth Amendment, were warranted and that the Fourth Amendment does not prohibit parolees being subjected to suspicionless searches. Id. at 853, 126 S.Ct. 2193 (internal quotation marks and citation omitted). In reaching its decision that parole searches supported by neither individualized.suspicion nor “special needs’’ are nonetheless reasonable under the Fourth Amendment, the Supreme Court stated:
The touchstone of the Fourth Amendment is reasonableness, not individualized suspicion. Thus, while this Court’s jurisprudence has often recognized that “to accommodate public and private interests some quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure,” United States v. Martinez-Fuerte, 428 U.S. 543, 560, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), we have.also recognized that the “Fourth Amendment imposes no irreducible requirement of such suspicion,” id. at 561, 96 S.Ct. 3074. Therefore, although this Court has only sanctioned suspicionless'searches in limited circumstances, namely, programmatic and special needs searches, we have never held that these are the only limited circumstances in which searches absent individualized suspicion could be “reasonable” under the Fourth Amendment. In light of California’s earnest concerns respecting recidivism, public safety, and reintegration of parolees into productive society, and because the object of the Fourth Amendment is reasonableness, our'decision today is far from remarkable. Nor, given our prior precedents and caveats, is it “unprecedented.”
Samson, 547 U.S. at 855 n. 4, 126 S.Ct. 2193.
[¶ 60] Despite, the guidance granted by Samson in regard to suspicionless, war-rantless searches of parolees, state and federal courts around the nation have disagreed as to the constitutional parameters of suspicionless probationary searches. Compare Harrell v. State, 162 So.3d 1128, 1132-33 (Fla.Dist.Ct.App.2015) (warrant-less, suspicionless search of probationer was reasonable even though probation order and statute lacked warrantless search probation condition), State v. Vanderkolk, 32 N.E.3d 775, 778-79 (Ind.2015) (a probationer may, by valid advance consent or search term in the conditions of release, authorize a suspicionless, warrantless search), State v. Bogert, 197 Vt. 610, 109 A.3d 883, 892 (2014) (because of probationer’s weakened expectation of privacy and *77 the state’s countervailing interest in promoting rehabilitation, reasonable suspicion was not a prerequisite to search of probationer’s home and computer), State v. Rowan, 341 Wis.2d 281, 814 N.W.2d 854, 866 (2012) (condition of extended supervision allowing for suspicionless probationer search was permissible under the Fourth Amendment), People v. Medina, 158 Cal.App.4th 1571, 1578, 70 Cal.Rptr.3d 413 (Cal.Ct.App.2007) (suspicionless search conducted according to probation conditions does not violate Fourth Amendment so long as it is not undertaken for harassment, or for arbitrary or capricious reasons, or in an unreasonable manner), and State v. McAuliffe, 125 P.3d 276, 282 (Wyo.2005) (probation conditions requiring probationer to submit to random searches and chemical testing were reasonable under Fourth Amendment), with Murry v. Com., 288 Va. 117, 762 S.E.2d 573, 581 (2014) (condition of probation requiring suspicion-less, warrantless searches at any time was not reasonable), State v. Short, 851 N.W.2d 474, 506 (Iowa 2014) (absent valid search warrant, search of probationer’s apartment violated state constitution), State v. Bennett, 288 Kan. 86, 200 P.3d 455, 463 (2009) (under state law, Samson was not applicable and probationary searches required “a rational, articulable suspicion of a probation violation or other criminal activity”), and In re J.E., 594 Pa. 528, 937 A.2d 421, 422 (2007) (warrantless search of probationer’s bedroom must be supported by a reasonable suspicion that the probationer was in violation of his supervision conditions); compare also United States v. King, 736 F.3d 805, 810 (9th Cir.2013) (a suspicionless search conducted pursuant to probation conditions does not violate the Fourth Amendment), United States v. Warren, 566 F.3d 1211, 1216 (10th Cir.2009) (“The second exception to the warrant and probable-cause requirements authorizes warrantless searches without probable cause (or even reasonable suspicion) ... when the totality of the circumstances renders the search reasonable.”), United States v. Reyes, 283 F.3d 446, 462 (2d Cir.2002) (“[PJrobation officers conducting a home visit are not subject to the reasonable suspicion standard.... ”), and United States v. Vincent, 167 F.3d 428, 431 (8th Cir.1999) (a search provision allowing for suspicionless, warrantless probationary searches is permissible if the search authority is narrowly and properly exercised), with United States v. Freeman, 479 F.3d 743, 749 (10th Cir.2007) (Kansas Department of Corrections rules governing warrantless parole searches prohibited parole searches without reasonable suspicion), United States v. Henry, 429 F.3d 603, 614 (6th Cir.2005) (Kentucky Department of Corrections rules require reasonable suspicion to conduct a warrantless probationary search), and United States v. Hagenow, 423 F.3d 638, 642 (7th Cir.2005) (only reasonable suspicion of criminal activity is needed to justify search of probationer’s residence).
[¶ 61] Although the United States Court of Appeals for the Eighth Circuit has attempted to stake out the constitutional bounds of warrantless probationary searches, it has remained reluctant to decide whether the constitutionality of a war-rantless probationary search requires some quantum of individualized suspicion. See United States v. Becker, 534 F.3d 952 (8th Cir.2008); United States v. Brown, 346 F.3d 808 (8th Cir.2003); United States v. Vincent, 167 F.3d 428 (8th Cir.1999). For example, in United States v. Brown, a probationer challenged the warrantless probationary search of his residence, which occurred after law enforcement alerted his probation officer of suspected drug activity. 346 F.3d at 810. Although the court weighed the degree to which the search intruded upon the defendant’s rea *78 sonable expectation of privacy against the degree to which the government needed to search to promote its legitimate interests and determined the Fourth Amendment permits a warrantless probationary search based only upon an officer’s reasonable suspicion of a probation violation, it declined to answer whether a probationary search would be upheld if it were not supported by reasonable suspicion. Id. at 811 n, 4 (“In Knights, because both parties conceded that the officer had a' reasonable suspicion, the Court reserved the issue of whether a lesser standard would satisfy the Fourth Amendment.... Because we find Brown’s probation officers searched with reasonable suspicion, we also reserve the issue.”). In United States v. Becker, the court again examined the constitutional extent of probationary searches without wading into the issue of whether such searches required individualized suspicion. 584 F.3d 952 (8th Cir.2008). Because the search of the probationer’s residence “comported with the terms of [his] probation,” which required reasonable suspicion, and “was supported by the officer’s reasonable suspicion that [he] had violated the terms of his probation,” the court upheld the warrantless. probationary search. Id. at 957. , As in Brown, however, the Eighth Circuit failed to provide any further guidance as to the level of suspicion required to justify a probationary search. Id. at 957; but see United States v. Moser, 240 F.Supp.2d 1068, 1074 (D.N.D.2003) (“[lender current North Dakota law, a probation officer does not need reasonable suspicion to search the residence of a probationer pursuant to a standard search clause. This Court in State v. Smith held a search of a probationer’s home did not violate the Fourth Amendment because ‘reasonable suspicion’ is not required for a probationary search so long as the search is reasonable.”). Therefore, Eighth Circuit jurisprudence offers minimal guidance for our analysis in the case currently before us.
[¶ 62] Although the ■ current Fourth Amendment jurisprudence governing state probationary searches can be described as being in a state of “considerable disarray,” U.S. v. Conway, 122 F.3d 841, 843 (9th Cir.1997), we have defined the constitutional bounds of warrantless probationary searches by employing an analysis which balances the state’s legitimate governmental'interest in reducing recidivism'with the probationer’s right to be free from unreasonable searches. Therefore, this analysis requires an examination of the reasonableness of the probationary search, not the degree of individualized suspicion upon which the search was based.
[¶ 63] In State v. Perbix, 331 N.W.2d 14 (N.D.1983), this Court laid the initial framework for reviewing the constitutionality of warrantless probationary searches. In Perbix, the defendant was on probation following a drug-related conviction, and his probation required him to submit to “searchfes] of his person, place of residence and motor vehicle, at any time, day or night, by any police officer or probation officer, with or without a search warrant and with or without probable cause.” Id at 15. Without a showing of probable cause or reasonable suspicion, law enforcement officers conducted a search of the probationer’s residence. Id. at 15-16. As a result, they found marijuana and hashish and charged the probationer with felony drug possession. Id. at 16. The probationer moved to suppress the evidence from the search, arguing the search clause was invalid because it violated N.D.C.C. § 12.1-32-07 by allowing law enforcement officers to conduct the search and because it violated the Fourth Amendment. Id.
[¶ 64] In Perbix, this Court held, under N.D.C.C. § 12.1-32-07, other law enforcement officers have the same authority as *79 probation officers to conduct probationary searches, stating:
[Conditions of probation requiring the probationer to submit to warrantless searches by probation officers or law enforcement officers, to the extent such searches contribute to the rehabilitation process; are not used as a subterfuge for criminal investigations; and are performed in a reasonable manner, are valid and not violative of the Fourth Amendment.
Perbix, 331 N.W.2d at 21. In addition to upholding the constitutionality of the search clause at issue, this Court refused to impose “a requirement that [probation] searches may be permitted only upon a showing of reasonable suspicion or probable cause.” Id. (-internal quotations marks omitted). Quoting Owens v. Kelley, 681 F.2d 1362, 1368-69 (11th Cir.1982), this Court stated:
Searches of the residence and person of probátioners ... are not conducted only when there is suspicion of a crime.... [T]he primary purpose of such searches is to deter the commission of crime and to provide supervisors with information on the progress of their rehabilitative efforts. It is clear that a requirement that searches only be conducted when officers have “reasonable suspicion” or probable cause that a crime has been committed or that a condition of probation has been violated could completely undermine the purpose of the search condition.
Any search conducted pursuant to the search condition of probation must, of course, be carried out in a reasonable manner and only in furtherance of the purposes of probation. The-terms of the condition do not authorize any.“intimidating and harassing search to serve law enforcement ends totally unrelated” to either Owens’ conviction or rehabilitation. United States v. Consuelo-Gonzalez, 521 F.2d at 265. We thus find that on its face the condition of probation is constitutional and is capable of being lawfully applied. See United States v. Gordon, 540 F.2d 452 (9th Cir.1976).
Id. at 21-22.
[¶ 65] After the Perbix décision, this Court reviewed challenges to the validity of probationary searches authorised by a condition of probation “under -the standard of whether the search was reasonable, including whether the search was performed in a reasonable manner, whether the search was a subterfuge for criminal investigation, and whether the search contributed to the probationer’s rehabilitation.” State v. Maurstadi 2002 ND 121, ¶ 18, 647 N.W.2d 688 (citing State v. Smith, 1999 ND 9, ¶ 19, 589 N.W.2d 546; State v. LaFromboise, 542 N.W.2d 110, 112-13 (N.D.1996); State v. Raywalt, 444 N.W.2d 688, 690 (N.D.1989)).
- [¶ 66] After the United States Supreme Court handed down its decision in Griffin v. Wisconsin, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), we once again reviewed the constitutionality of a warrantless search of a probationer’s residence in State v. Smith, 1999 ND 9, 589 N.W.2d 546. In Smith, the probationer was on supervised probation and was subject to a search clause requiring him to “submit to a search of his person, vehicle, or place of residence by any probation officer at any time of the day or night, with or without á search warrant.” Id. at ¶ 2. Because the probationer was suspected of being involved in drug-related- activity, the probation officer searched his home and vehicle and found drugs and paraphernalia. Id. at ¶ 5. Although the probationer argued that under Griffin a probationary search is valid only if it is supported by reasonable suspicion, we refused to overrule Perbix and impose a requirement that *80 probationary searches may be carried out only upon a showing of probable cause or reasonable suspicion, stating:
Griffin does not specifically require reasonable suspicion; it requires the search to be reasonable under a state’s statute on probationer searches. Further, nothing in Griffin suggests the clear logic and holding of Perbix should be reversed.
Smith, at ¶ 18.
[¶ 67] After United States v. Knights, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001), we examined whether a probationary search that was conducted as a “subterfuge to advance a criminal investigation” was a violation of the Fourth Amendment. State v. Maurstad, 2002 ND 121, ¶ 12, 647 N.W.2d 688. In Maurstad, a probationer who was placed on probation for drug-related offenses challenged the constitutionality of the probationary search because he claimed the search was done not for “a probationary purpose” but rather “to assist an ongoing criminal investigation.” Id. at ¶ 7. In reaching our decision as to whether the search was conducted for an unconstitutional purpose, we stated that Knights held, in part, the purpose of a probationary search is not relevant when deciding whether a search was valid. Id. at ¶ 30; see also Knights, 534 U.S. at 122, 122 S.Ct. 587 (“Because our holding rests on ordinary Fourth Amendment analysis that considers all the circumstances of a search, there is no basis for examining official purpose.”). As a result, we held “the alleged purpose of a probationary search is irrelevant to the determination of its validity” and overruled the portion of Perbix that required the purpose of a probationary search be considered when determining the validity of the search. Id. at ¶ 31,
[¶ 68] In addition to modifying the standard for reviewing the validity of probationary searches, Maurstad reaffirmed Perbix and declined to impose a requirement that such searches may be deemed valid only upon a showing of probable cause or reasonable suspicion. See Maurstad, 2002 ND 121, ¶ 22, 647 N.W.2d 688 (citing LaFromboise, 542 N.W.2d at 112 (affirming Perbix); Raywalt, 444 N.W.2d at 690 (reaffirming Perbix)). Therefore, in light of the United States Supreme Court’s decisions in Griffin, Knights, and Samson and our decision in Maurstad, the constitutionality of a warrantless probationary search will be upheld if the conditions of probation are: (1) designed to contribute to the rehabilitation process; (2) performed in a reasonable manner; and (3) valid and not violative of the Fourth Amendment. Maurstad, at ¶¶ 18, 32; see Smith, 1999 ND 9, ¶ 9, 589 N.W.2d 546; LaFromboise, at 112; see also United States v. Moser, 240 F.Supp.2d 1068, 1074 (D.N.D.2003) (“The North Dakota Supreme Court in State v. Smith held that a search of a probationer’s home did not violate the Fourth Amendment because ‘reasonable suspicion’ is not required for a probationary search so long as the search is reasonable.”).
[¶ 69] Although a district court is granted the discretion to decide what probation conditions to impose on a probationer, under N.D.C.C. § 12.1-32-07, those conditions must be “reasonably necessary to ensure that the defendant will lead a law-abiding life or to assist the [probationer] to do so.” N.D.C.C. § 12.1-32-07(2). In the past, we have held search clauses which require a probationer to submit to warrantless searches of his or her person, place, and vehicle contribute to the rehabilitation process by ensuring the probationer cannot conceal criminality and lives a law-abiding life. See Perbix, 331 N.W.2d at 22; see also Smith, 1999 ND 9, ¶ 24, 589 N.W.2d 546 (warrantless search condition *81 of probation upheld). In the present case, Ballard was arrested for numerous drug-related charges, and although he was not placed on supervised probation in the traditional sense, which would generally involve more intensive supervision, the court elected to place him on unsupervised probation and require him to submit “to a search of his person, place and vehicle at the request of law enforcement without a warrant” and “to random drug-testing without a warrant or probable cause, including but not limited to urine analysis.” See N.D.C.C. § 12.1-32-07(1) (“In class A misdemeanor cases, the court may place the defendant under the supervision and management of the department of corrections and rehabilitation or other responsible party.”); N.D.C.C. § 12.1-32-07(3)(a)-(i) (conditions a court may impose for supervised probation). Because we recognize probationers are “more likely than the ordinary citizen to violate the law” and because the random search and drug-testing clauses restrain further drug-related activity and deter recidivism, it is reasonable to conclude the exercise of the search clause contributed to the rehabilitation process regardless of whether Ballard’s probation was deemed supervised or unsupervised. Samson, 547 U.S. at 849, 126 S.Ct. 2193 (internal quotation marks and citations omitted); see Perbix, at 20 (“We are also cognizant of the fact that criminal activities on the part of drug offenders are often uncovered only through searches of the personal property of the defendant.”).
[¶ 70] In addition to contributing to Ballard’s rehabilitation process, the probationary search was conducted in a reasonable manner. In deciding whether similar searches have been conducted in a reasonable manner, we evaluate the manner, intensity, and scope of the search. See, e.g., Maurstad, 2002 ND 121, ¶¶ 36-37, 647 N.W.2d 688 (a vehicle search conducted within forty-five minutes to an hour was deemed reasonable); Smith, 1999 ND 9, ¶ 19, 589 N.W.2d 546 (a search of probationer’s residence that lasted approximately one hour was deemed reasonable); LaFromboise, 542 N.W.2d at 114 (forced entry into probationer’s residence and three-hour search deemed reasonable in light of circumstances surrounding the search). In the present'case, nothing1 in the record or Ballard’s arguments suggests the search was performed in an unreasonable length of time or the area being searched was extensively damaged. Furthermore, the district court found the probationary search of the residence at which Ballard was staying was reasonable because it was done immediately after he was stopped by law enforcement officers, was confined to the bedroom Ballard claimed to be his, and was not done in a harassing manner, and nothing in the record or Ballard’s argument suggests otherwise. The district court’s finding that the probationary search conducted on Ballard was performed in a reasonable manner is supported by the evidence. See State v. Krous, 2004 ND 136, ¶ 21, 681 N.W.2d 822 (“Any search conducted under a condition of probation must be conducted in a reasonable manner.”); LaFromboise, at 114 (“The trial court found nothing unreasonable about the length or extent of the search under the circumstances, and neither do we.... The manner, intensity, and scope of the search were not unreasonable.”).
[¶71] To determine whether the probationary search conducted on Ballard was valid and not violative of the Fourth Amendment, we must begin “by recognizing that probation is not the same as freedom.” Perbix, 331 N.W.2d at 18. Probation, like incarceration, is “a form of criminal sanction imposed by a court upon an offender after [a] verdict, finding, or plea of guilty.” Griffin, 483 U.S. at 874, *82 107 S.Ct. 3164 (internal quotation marks and citations omitted). While under probation, rather than enjoying “the absolute liberty to which every citizen is entitled,” probationers are merely granted. “conditional liberty properly dependent on observance of special probation restrictions.” Id. (internal quotation marks and citation omitted). “Just as other punishments for criminal convictions curtail an offender’s freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens.” Knights, 534 U.S. at 119, 122 S.Ct. 587.
[¶ 72] In light of probationers5 diminished Fourth Amendment protections, a state’s operation of its probation system “presents ‘special needs’ beyond normal law enforcement that justify departure from the usual warrant and probable-cause requirements.” Griffin, 483 U.S. at 873-74, 107 S.Ct. 3164. For example, in Griffin the United States Supreme Court stated that to properly supervise probationers convicted of crimes involving drugs or illegal weapons, a “probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society....” Id. at 880, 107 S.Ct. 3164. Therefore, the Griffin court held a probationary search is permissible if conducted under a state law that satisfies the Fourth Amendment’s reasonableness standard. Id. at 873, 107 S.Ct. 3164. Reasonableness “is determined by assessing, on the one hand, the degree to which [the search] intrudes upon an individual’s privacy, and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.”. Knights, 534 U.S. at 118-19, 122 S.Ct. 587.
[¶ 73] It is well-established in North Dakota, a condition of probation will be deemed valid under the Fourth Amendment if it has a relationship to the crime of which the offender was convicted, relates to conduct which is in itself criminal, and forbids conduct reasonably related to future criminality.. See Perbix, 331 N.W.2d at 19. In the present case, the search and drug-testing clause get .their authority from N.D.C.C. § 12.1-32-07(4). According to this statute, a district court may impose such conditions as it deems appropriate. The statute specifically provides:
4. When imposing a sentence to probation, probation in conjunction with imprisonment, or probation in conjunction with suspended execution or deferred imposition of sentence, the court may impose such conditions as it deems appropriate and may include any one or more of the following:
[[Image here]]
1. Submit to a medical examination or other reasonable testing for the purpose of determining the defendant’s use of narcotics, marijuana, or other controlled substance whenever required by a probation officer.
[[Image here]]
n. Submit the .defendant’s person, place of residence, or vehicle to search and seizure by a probation : officer at any time of the day or night, with or without a search warrant. -
N.D.C.C. § 12,l-32-07(4)(i) and (n). .Language similar to this was incorporated into Ballard’s conditions of probation. The conditions provided Ballard was required to submit “to a search of his person, place and vehicle at the request of law enforcement without a warrant” and “to random drug-testing without a warrant or probable cause, including but not limited to a urine analysis,”
[¶ 74] Although Ballard argues the search conducted under these probation *83 conditions was unreasonable under the Fourth Amendment, we should conclude otherwise. Here, after Ballard was convicted of drug-related crimes, the district court imposed probation conditions requiring him to submit to random searches and drug tests that could potentially reveal any additional drug offenses. Therefore, because these probation conditions clearly have a relationship to the crimes of which Ballard' was convicted, relate to conduct which is in itself criminal, and forbid conduct reasonably related to future criminality, I conclude the conditions are valid and not violative of the ‘Fourth Amendment.
[¶ 75] In sum, although Ballard and the majority attempt to equate “reasonableness” with “reasonable grounds” and argue the lack of individualized suspicion of wrongdoing somehow, in and of itself, invalidates . the probationary search under the Fourth Amendment, the United States Supreme Court, as well as this Court, has made it abundantly clear this is not the proper analysis for determining the constitutional bounds of probationary searches. Because reasonableness, not individualized suspicion, is “[t]he touchstone .of the Fourth Amendment,” a probationary search authorized by state law does not have to be conducted on the basis of reasonable grounds to be considered “reasonable” under the Fourth Amendment. Samson v. California, 547 U.S. 843, 855 n. 4, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006). Instead, a probationary search will be deemed reasonable within the meaning of the Fourth Amendment if “it [is] conducted pursuant to a valid regulation governing probationers.” Griffin, 483 U.S. at 880, 107 S.Ct. 3164. In this case, the probationary search contributed to Ballard’s rehabilitation by ensuring he could not conceal criminality or further drug use, was performed ini a reasonable manner, intensity, and scope, and was a valid exercise of the state’s probation system, which is authorized by North Dakota law. I therefore conclude the probationary search was valid and did not violate the Fourth Amendment.
II
[¶76] Even if reasonable suspicion is the standard for a probationary search, as declared by the majority, it is a question of law which we review de novo.- It does not matter whether the officers or the district court thought or said there was reasonable suspicion. Based on the facts here, including the defendant’s drug-related criminal history and his association with another on probation for drug-related convictions, there was reasonable suspicion, and we should affirm.
[¶ 77] The majority, at ¶ 3, seems to erroneously believe that the subjective views of the officer are determinative:
The deputy testified at thé preliminary hearing that he stopped Ballard for the sole reason of performing a probation search and that he did not have any “reasonable articulabl[e] suspicion” of any drug-related or criminal activity when he made the stop.
[¶ 78] In Zimmerman v. North Dakota Dep’t óf Transp., 543 N.W.2d 479 (N.D.1996), we upheld the validity of the stop where the deputy testified his reason for the stop was a basis that was inadequate but his testimony established another basis which would justify the stop. As we stated in that ease:
We resolved a similar issue in State v. Smith). 452 N.W.2d 86, 89 (N.D.1990). In Smith, the officer, stopped a vehicle to investigate a possible open container violation. We held the stop was valid even if the officer’s articulated reason for the stop was inadequate, because the officer had made other observations *84 which gave him reasonable cause to stop the vehicle to issue a citation for unlawful deposit of refuse. We explained:
“In the context of probable cause to arrest, courts have held that, except for pretextual arrests, when an officer makes an arrest which is properly-supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which there is no probable cause, nor his verbal announcement of the wrong offense, vitiates the arrest.
⅜ * * * * *
“The same rule applies to police investigatory practices short of formal arrest.”
Smith at 88-89. See also State v. Hawley, 540 N.W.2d 390, 392 (N.D.1995) (“the reasonable-and-articulable-suspi-cion standard is objective, and it does not hinge upon the subjective beliefs of the arresting officer.”).
In United States v. Cummins, 920 F.2d 498, 500-501 (8th Cir.1990), cert. denied, 502 U.S. 962, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991), the United States Court of Appeals for the Eighth Circuit used similar reasoning in upholding an investigative stop based on the driver’s failure to signal a right turn:
“Defendants argue that Officer Ber-nal’s initial stop of the green Volkswagen was pretextual, because his real reason for making the stop was based on his suspicions aroused by their strange behavior rather than on Cummins’ failure to signal a right turn. The defendants conclude that the stop was unreasonable under the Fourth Amendment. We disagree. When an officer observes a traffic offense — however minor — he has probable cause to stop the driver of the vehicle.... In our view, this otherwise valid stop does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity. It is also our view that the stop remains valid even if the officer would have ignored the traffic violation but for his other suspicions.
⅝ ⅞? ⅜ ⅝ ⅛ ⅝
“[W]e see no reason for requiring an officer’s state of mind to perfectly match his legitimate actions. Such symmetry is not required by the Constitution. Accordingly, we hold that because Officer Bernal had probable cause to believe that a traffic violation had occurred, his initial stop of the car driven by Cummins was valid.”
The rationale of these cases is persuasive. Officer Sampers testified she observed Zimmerman commit a moving violation, and her observation gave her a valid basis to stop Zimmerman’s vehicle. The validity of the stop is not vitiated merely because Officer Sampers subjectively stopped the vehicle for another reason (i.e., Officer Gruebele told her to) which, in itself, may not have provided an adequate basis for the stop.
Id. at 482-83.
Ill
[¶ 79] I would affirm the district court judgment.
[¶ 80] DALE V. SANDSTROM